251 So.2d 45

**RIVERLAND HARDWOOD COMPANY, Inc.**

v.

**CRAFTSMAN HARDWOOD LUMBER COMPANY.**

No. 50965.

June 28, 1971.

Dissenting Opinion Aug. 10, 1971.

Adams & Reese, Joel L. Borrello, New Orleans, for plaintiff-appellant-applicant.

Monroe & Lemann, Benjamin R. Slater, Jr., William J. Hamlin, New Orleans, for defendant-appellee-respondent.

DIXON, Justice.

Defendant is an Illinois corporation who is neither qualified to do business in Louisiana nor has appointed an agent for service of process. Plaintiff seeks to recover $7,960.92, representing the purchase price for certain lumber which it furnished defendant Craftsman pursuant to Craftsman's purchase order of June 2, 1969. Defendant filed exceptions to the jurisdiction of Lousiana courts. Following a hearing on the exceptions (in which it was disclosed that the defendant had made three purchases from three different Louisiana lumber mills in 1968 and 1969), the trial court maintained Craftsman's exception to personal jurisdiction and dismissed plaintiff's suit. The Court of Appeal affirmed

(239 So.2d 465). Plaintiff sought writs of certiorari and review of that decision.

Plaintiff's contention is that the "long arm" statute, R.S. 13:3201, allows the courts of this state to exercise personal jurisdiction over a nonresident who buys goods in this state.

R.S. 13:3201 provides in part as follows:

"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

"(a) transacting any business in this state;

"(b) contracting to supply services or things in this state;

   &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; or &ast; &ast; &ast;."

Comment (d) of the Louisiana Law Institute which appears beneath the statute explains the scope to be given to the phrase "transacting any business:"

"(d) 'Transacting business,' as used in Subdivision (a) is a term which is much broader than 'doing business' as defined by earlier Louisiana cases, &ast; &ast; &ast;. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase 'engaging in a business activity' of R.S. 13:3471(1)."

Several other states use the same phrase as R.S. 13:3201(a) to extend personal jurisdiction of their courts to nonresidents. See, for example, Ill.Stat.Ann., c. 110, sec. 17 (1961); Mont.R.Civ.Proc., 4B(1) (1962 Supp.); N.Y.C.P.L.R., sec. 302(a) (1963); cf. Uniform Interstate and Int'l. Proc. Act, sec. 1.03.

It is difficult to make a sound argument that, although selling in a foreign state is "transacting business," buying is not. Almost by definition, to purchase is to do business. Although it is suggested that R. S. 13:3201(a) is modified by phrase (b) or perhaps by (d), the statute is not structured in such a manner. A straightforward reading of the statute discloses that, within constitutional limits, transacting any business in Louisiana, including a mail order purchase, will subject the nonresident purchaser to the jurisdiction of the Louisiana courts.

Before an examination of the constitutional limits, it is noted that neither plaintiff nor defendant has found any court in any other state which subjects nonresidents to the jurisdiction of its courts when the

cause of action arises from an isolated purchase of goods by the nonresident.

Purchases in a state as a regular part of its business, however, might subject a nonresident purchaser to the jurisdiction of courts in the state of the seller. Henry R. Jahn & Son, Inc. v. Superior Court of California, 49 Cal.2d 855, 323 P.2d 437. See also Sterling Novelty Corp. v. Frank & Hirsch Distributing Co., 299 N.Y. 208, 86 N.E.2d 564. Wisconsin's jurisdictional statute, one of the broadest, has been interpreted as allowing a cause of action in Wisconsin against an Illinois purchaser on the basis, allowed by the jurisdictional statute, of permitting suit in Wisconsin in an action arising out of a promise by the nonresident defendant to pay for services to be performed within the State of Wisconsin. Flambeau Plastics Corp. v. King Bee Manufacturing Co., 24 Wis.2d 459, 129 N. W.2d 237.

Statutes extending the jurisdiction of the courts of a state to nonresidents must meet the due process requirements of the 14th Amendment of the United States Constitution. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, involved the application of the laws of the State of Washington to commission salesmen of a nonresident shoe company. Chief Justice Stone summarized the jurisprudence that had developed to that day, saying "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" One factor to be considered to determine whether "traditional notions" are offended was said to be an "estimate of the inconveniences" which would result from a trial away from the defendant's home or place of business. The "quality and nature of the activity" in the foreign state was said to be a factor to be considered. The court was impressed with the fact that the nonresident shoe company's activities were neither irregular nor casual, but were systematic and continuous throughout the years involved. The majority opinion was criticized for the emotional appeal in the words "fair play," "justice," and "reasonableness," because such natural law concepts lend only weak assistance in deciding future cases.

Yet, when it became the critic's turn to write, in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the standards announced in International Shoe Co. were cited and quoted, the majority opinion saying: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." The court was impressed with the idea that a state has a "manifest interest" in provid-

ing effective means for its citizens to pursue a claim against an insurer short of following the insurance company "to a distant State in order to hold it legally accountable."

Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283, added little to the measure to decide whether a long arm statute is compatible with the due process clause except a reference to "affiliating circumstances" in the state of the forum.

In the absence of a more precise standard, then, we must decide whether there is a difference between foreign purchasers and foreign sellers with respect to the due process clause.

These differences are suggested:

At the present, people and corporations who sell in a foreign state should be aware that nearly every state, to this moment, requires that they go to the residence of the purchaser to sue on a claim arising from the transaction. Indeed, interstate sellers can more easily travel, usually, to foreign jurisdictions than can the interstate buyer to litigate upon the contract. Sellers accept this as a risk of interstate business. There is nothing in the law of any of the states to justify a belief on the part of a mail order purchaser that he might get sued a thousand miles from home if he fails to pay, with or without cause, for an isolated purchase in a foreign state. Those

who sell are usually participating in a business activity for profit. Those who buy goods from a foreign jurisdiction include great numbers of ultimate consumers, who transact the business of purchasing, not in pursuit of a profit, but in satisfying personal needs or pleasure. Buying is not traditionally the same as doing business. Prospective nonresident purchasers, knowing they subject themselves to a foreign jurisdiction by a simple purchase, could be expected to do business where the risk and cost of litigation are not increased. A buyer does not normally contemplate the use of the laws or courts of the seller's state.

Such differences between interstate purchasers and interstate sellers support the conclusion that it would "offend traditional notions of fair play and substantial justice" to allow a foreign state to subject an out of state purchaser to its jurisdiction. Especially is this true when the out of state purchaser is an ultimate consumer, not in business connected with the purchase, and when the purchase is of relatively small value.

Of course, such is not the case before us. The purchaser here is in business. The value of the purchase is substantial. The purchaser hopes to profit from the transaction.

Nevertheless, our statutes give us no authority (nor would we desire to exercise

it) to fix a dollar value for purchases which would subject out of state purchasers to the jurisdiction of Louisiana courts. Courts must treat all alike in deciding whether their business transaction subjects them to the jurisdiction of a foreign court within the limits of "due process." Whether regular and systematic purchases in pursuit of business activities will meet the constitutional test of due process is not before us. What is before us is a single order from defendant for lumber—the only business transacted in the state by defendant, except for two previous orders placed with other companies.

The judgment of the Court of Appeal is affirmed, and plaintiff's suit is dismissed at its cost.

SUMMERS, Justice (dissenting).

In my view, the ultimate decision of this Court is based upon the erroneous factual premise that only a "single order" by Craftsman Hardwood Lumber Company is involved in determining whether Craftsman transacted any business in this State. Despite the conclusion based upon this factual premise, the majority opinion itself recognizes in the statement of facts that three purchases by Craftsman in Louisiana had taken place. All involved substantial purchases of lumber from Louisiana lumber dealers. This lumber Craftsman utilized in its business for fabrications which

it advertised for sale in Louisiana in at least two trade publications.

No provision of Sections 3201 through 3207 of Title 13 of the Revised Statutes requires more than one transaction to vest jurisdiction in Louisiana Courts, even if it be assumed that only one transaction is involved in Craftsman's dealings here. To the contrary, those sections refer to "a cause of action" and to transacting "any business" in this state. In the case of injury or damage by an offense or quasi offense, the reference is to "an act or omission" in this state. Again, in this connection, I note the comments explain that "transacting business" as used in Section 3201 "is intended to mean a single transaction of either interstate or intrastate business," and to be as broad as the phrase "engaged in a business activity" of Section 3471(1) of the Revised Statutes.

As the comments to Section 3201 of Title 13 of the Revised Statutes state, Sections 3201 through 3207 were adopted to permit the Courts of this state to tap the full potential of jurisdiction in personam over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223 (1957). The majority opinion fails to grasp and apply the spirit of this law. To the contrary, in its determination

the majority has applied a much more restrictive view of the law than the standard adopted by the United States Supreme Court in the McGee case.

Louisiana has a manifest interest in providing effective means for its citizens to pursue a claim against another, short of following the defendant "to a distant state in order to hold it legally accountable." McGee v. International Life Insurance Company, supra.

Before this Court is a case involving a contract executed and performed in Louisiana, controlled by Louisiana law, by a defendant who has previously been involved in similar transactions with other Louisiana firms, purchasing materials used in defendant's business in another state, the materials being essential to that business. The value of the purchase by defendant is substantial and defendant hoped to profit by this transaction.

While seemingly concluding that this transaction would vest jurisdiction if a sale by a foreign business firm to a Louisiana buyer was involved, the majority decrees that a like result does not obtain because the foreign resident here is the buyer. There is no logical or rational basis for such a distinction, and the injustice of the result reached here on this basis is apparent.

I respectfully dissent.