285 So.2d 328 (1973)
Oscar H. DODSON et al., Plaintiff-Appellee,
v.
Louis A. FONTENOT, Defendant-Appellant.
No. 4309.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1973.
Rehearing Denied December 3, 1973.
Fruge & Foret by J. Burton Foret, Ville Platte, for defendant-appellant.
Lewis & Lewis by Seth Lewis, Jr., Opelousas, for plaintiff-appellee.
Before CULPEPPER, MILLER and PONDER, JJ.
MILLER, Judge.
Plaintiffs Oscar H. Dodson and Lula Wharton Van Hoose seek recognition of a judgment of the District Court of Dallas County, Texas. The Louisiana resident defendant, Louis A. Fontenot, contends that the Texas judgment is void for lack of personal jurisdiction of the Texas courts. From an adverse judgment, Fontenot appeals. We affirm.
The issue is whether the Texas court had personal jurisdiction over Fontenot under the Texas Longarm Statute. Could the Texas courts interpret their Longarm statute *329 to provide jurisdiction over Fontenot under the facts of this case and, if so, could such an interpretation violate the due process requirements of the U.S. Constitution?
Fontenot has been domiciled in St. Landry Parish, Louisiana since 1962. He is in the business of breeding, buying and selling horses. Fontenot received by mail a catalogue containing notice of a horse auction in Dallas, Texas. On September 10, 1966, he attended the auction and bid in three mares, two of which had foals at their side and the third having been bred. While in Texas Fontenot paid for the purchase by check drawn on his Louisiana bank. While in Texas Fontenot made arrangements to have the horses delivered to his Louisiana horse farm along with registration papers on the mares and breeding certificates on the foals.
The horses and foals were delivered in good condition to Fontenot's Louisiana horse farm along with registration certificates on the mares, but breeding certificates on the foals were not delivered. Fontenot then stopped payment on his check and notified plaintiffs that payment would be withheld until the missing papers were supplied. Fontenot had telephone conversations with the Dallas vendors on several occasions. He testified that he never did receive the breeding certificates. He made no effort to return the mares and foals or to pay for his purchase. He bred some of the animals, sold some and traded others. He has no records concerning the few that died several years after the purchase.
Fontenot testified that the auction in question is the only one which he attended in Texas, and there is no evidence to show that he brought or sold other horses or did other business in Texas.
Plaintiffs sued Fontenot in the District Court of Dallas County, Texas. Service and citation were made on the Secretary of State of Texas, as statutory agent for Fontenot, and the Texas judgment recites that such service was forwarded to Fontenot as required by law. Judgment by default was rendered against Fontenot on February 13, 1968 in the total sum of $1,925.00 plus attorney's fees and costs. Plaintiffs now seek to have recognized this Texas judgment in the courts of Louisiana.
Article 2031b, Sec. 2 of the Texas Longarm Statute, Vernon's Ann.Civ.St., provides for jurisdiction over nonresident natural persons who "shall engage in business" in Texas, and Sec. 4 provides that persons "shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State. . . ."
As is true of the Louisiana Longarm Statute, LSA-R.S. 13:3201-13:3207, the purpose of the Texas statute is to exploit the fullest permissible reach of state court jurisdiction over nonresidents under International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
In O'Brien v. Lanpar Company, 399 S.W. 2d 340 (1966) the Texas Supreme Court (at 399 S.W.2d page 342) listed three basic factors for establishing jurisdiction over non-residents:
(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;
(2) the cause of action must arise from, or be connected with, such act or transaction; and
(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.
*330 See also Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir. 1966); Custom Textiles, Inc. v. Crown Sample Book Company, 472 S.W.2d 848 (Tex.Civ. App.1971).
We conclude that the Texas courts could find the present judgment valid. Fontenot who is in the business of buying and selling horses, flew to Dallas for the sole purpose of bidding on horses at auction. He successfully bid on several mares and foals. He paid for them by check issued in Texas. While in Texas he contracted for the delivery of the mares and foals to his Louisiana horse farm and arranged to have the proper registration papers delivered to him. Fontenot made several telephone calls to Texas concerning breeding certificates. These are sufficient contacts to confer jurisdiction over the nonresident defendant under the Texas Longarm Statute. See Moore v. Central Louisiana Electric Company, Inc., La., 273 So.2d 284 (1973); Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company, La., 283 So.2d 687 (1973).
We are required to give the Texas judgment the same full faith and credit in Louisiana as that judgment would receive in Texas. 28 U.S.C. § 1738; U.S. Constitution Article 4, section 1.
The case of Riverland Hardwood Company v. Craftsman Hardwood Lumber Company, 259 La. 635, 251 So.2d 45 (1971) is distinguished. The purchases before the court in Riverland were mail order purchases. See 239 So.2d 465 at 467 (La.App. 4 Cir. 1970). Had Fontenot limited his Texas contacts to mail order transactions, Riverland would be persuasive.
The trial court judgment is affirmed at appellant's costs.
Affirmed.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge (dissenting).
As is true of the Louisiana Longarm Statute, LSA-R.S. 13:3201-13:3207, the purpose of the Texas statute is to exploit the fullest permissible reach of state court jurisdiction over nonresidents under International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Insurance Company, 355 U.S. 320, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. The issue is whether under the Texas statute, and Texas jurisprudence construing it, the Texas Court had jurisdiction in the present case.
Plaintiff first cites Wayne Thode, In Personam Jurisdiction; Article 2031b, the Texas Longarm Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere; 42 Tex.Law Rev. 297-310. This article cites no case from Texas, or any other state or federal court, which has held that a single isolated purchase in a state by a nonresident gives the state jurisdiction in personam. Most of the cases cited in the article involve situations where a nonresident sold goods or services in Texas, or where there was a series of business transactions.
The first case cited by plaintiff is Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir. 1966), in which the plaintiff, a Washington corporation, contracted with several Texas chicken hatcheries for the sale of female breeding stock and the lease of male stock with continuous supervisory rights in Texas. The court held that the Texas statute definition of "doing business", as applied to the facts of the case, did not offend the Federal Constitution. The decision emphasized defendant's retention of supervisory powers over the male chickens in Texas and the continuing nature of the business to be conducted in Texas by the nonresident under the contract. The Atwood Hatcheries case is readily distinguishable from the present matter, which involved only one isolated purchase in Texas, and no other business contacts.
The next case cited by plaintiffs is O'Brien v. Lanpar Company, 399 S.W.2d *331 340 (Tex.S.Ct.1966), in which the defendant, a Texas corporation, sent representatives to Illinois, where they contracted with the plaintiff, an attorney, to prosecute an action in Illinois. The attorney later obtained a judgment by default in Illinois against the defendant Texas corporation. The Texas court recognized the Illinois judgment, holding that Illinois had personal jurisdiction. O'Brien v. Lanpar Company, supra, is also readily distinguishable from the present matter. The employment of an attorney to handle a continuous prosecution involves substantially more contact with a state than does a single isolated purchase, such as that involved in the present case.
The last case cited by plaintiff is Custom Textiles, Inc. v. Crown Sample Book Company, 472 S.W.2d 848 (Tex.Civ.App.1971), in which the defendant, a Pennsylvania corporation, sent its president to Texas to negotiate a contract to sell custom-made fabric sample books to plaintiff in Texas. Plaintiff later sued defendant in Texas for breach of the contract. The court held Texas had jurisdiction, emphasizing the numerous negotiations in Texas leading up to the contract, the partial deliveries of sample books made and the receipt from Texas of partial payments. The Custom Textile, Inc. case is also readily distinguishable from the instant matter in that it involved a sale by a nonresident to a Texas buyer, with substantial negotiations in Texas leading up to the contract and other contacts with Texas after the contract was consummated. The present matter involves one isolated purchase by a Louisiana resident in Texas.
In Riverland Hardwood Company v. Craftsman Hardwood Lumber Company, 259 La. 635, 251 So.2d 45 (1971) the defendant was an Illinois corporation which mail-ordered $7,000 worth of lumber from the plaintiff, a Louisiana sawmill. The evidence showed defendant had made three purchases of lumber from three different Louisiana mills. Our Supreme Court held that Louisiana courts did not have personal jurisdiction over the nonresident defendant. The decision emphasizes the distinction between nonresident sellers and nonresident purchasers:
"Those who sell are usually participating in a business activity for profit. Those who buy goods from a foreign jurisdiction include great numbers of ultimate consumers, who transact the business of purchasing, not in pursuit of a profit, but in satisfying personal needs or pleasure. Buying is not traditionally the same as doing business. Prospective nonresident purchasers, knowing they subject themselves to a foreign jurisdiction by a simple purchase, could be expected to do business where the risk and cost of litigation are not increased. A buyer does not normally contemplate the use of the laws or courts of the seller's state.
"Such differences between interstate purchasers and interstate sellers support the conclusion that it would `offend traditional notions of fair play and substantial justice' to allow a foreign state to subject an out of state purchaser to its jurisdiction."
In Fisher v. Albany Machine & Supply Company, 261 La. 747, 260 So.2d 691 (1972), the Court explained its holding in Riverland as follows:
"In that case, we are determining the right of our courts to exercise jurisdiction over a nonresident buyer under R. S. 13:3201(a). Our holding there meant that it would require more `contacts' for our courts to obtain jurisdiction over a nonresident who buys in Louisiana than a nonresident who sells in Louisiana. We there held that due "process requirements are different for nonresident buyers and nonresident sellers. The case is not applicable here."
The Riverland case was criticized in The Work of Appellate Courts, 32 L.L.R. 321, the author taking the position that a distinction between nonresident buyers and sellers is justified where the buyer purchases *332 for his own use and pleasure, but is not justified where the purchase is in connection with the buyer's business. Nevertheless, Riverland is the last expression of our Supreme Court on the question, and I think we are constrained to follow it.
I conclude that in the present case the courts of Texas did not have jurisdiction in personam over the defendant. I rely particularly on Riverland Hardwood Company v. Craftsman Hardwood Lumber Company, supra, which makes the distinction between an interstate seller and an interstate buyer. In the present case, the Louisiana resident made one isolated purchase in Texas. Actually, the facts in Riverland were stronger in favor of jurisdiction, since the defendant there had made at least three purchases of lumber from Louisiana mills.
Plaintiff has cited no case from Texas or Louisiana of any other court which has gone as far as he asks the courts of Louisiana to go in the present matter.
For the reasons assigned, I respectfully dissent.