PONDER, Judge.
Plaintiff-appellant, March Chemicals Company, Inc., (March), a Louisiana Corporation, filed suit on open account for $3,162.00 against White Cross Laboratories, Inc., (White), defendant-appellee, a New York corporation not licensed to do business in Louisiana and not having appointed an agent for service of process. White, served by mail pursuant to LSA-R.S. 13:3204, filed a declinatory exception of lack of personal jurisdiction. The lower court sustained the exception and dismissed March’s suit. March has timely perfected this appeal. We affirm.
White purchased chemicals from March after various telephone and written communications. The chemicals were shipped from Louisiana to White in New York. There is some dispute or lack of clarity as to whether it was March or White which initiated the interstate negotiations. The deposition and affidavit in the record do not clear up this point. There also appears to have been two similar transactions between March and White in the past; however the precise nature of these is not of record.
White does not have any assets, employees, agents or representatives in Louisiana. White has never sold any of its products in Louisiana and has never advertised in publications principally sold and distributed here. No representative of White has ever come to Louisiana for business purposes.
It is March’s contention that personal jurisdiction is appropriate in this case under our “long-arm statute.” Specifically,, we are directed to R.S. 18:3201(a) which reads as follows:
“A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident’s (a) transacting any business in this state;
It is White’s contention that personal jurisdiction in this case is inappropriate under Riverland Hardwood Co. v. Craftsman Hardware Lumber Co., 259 La. 635, 251 So.2d 45 (1971). In Riverland, a foreign corporation that was not authorized to do business here and had not appointed an agent for service of process, purchased lumber from a Louisiana seller pursuant to a mailed purchase order. The foreign corporation had previously purchased lumber from two other Louisiana sellers and advertised in publications which were distributed here. Yet, when the Louisiana seller sued for $7,960.92 representing the price of the lumber, the Supreme Court held that our courts had no personal jurisdiction of the foreign purchaser.
The rationale of the Court in Riverland was that there is a constitutionally recog *400 nized distinction between foreign purchasers and foreign sellers; that although it was proper to make the foreign seller go to the forum of the foreign purchaser to secure the purchase price of the sale, “it would ‘offend traditional notions of fair play and substantial justice’ to allow a foreign state to subject an out of state purchaser to its jurisdiction.” Riverland, supra, 251 So.2d at page 47. See McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, for the constitutional standards of due process that must be met in order to assert jurisdiction over a nonresident.
March argues on appeal that the holding of the Riverland case has been eroded by Moore v. Central Louisiana Electric Company, Inc., La., 273 So.2d 284 (1973), Fisher v. Albany Machine and Supply Company, 261 La. 747, 260 So.2d 691 (1972) and Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company, La., 283 So.2d 687 (1973). We have closely studied these and other cases and conclude that the holding of the Riverland case is still viable.
Moore, supra, is clearly distinguishable as it did not involve the application of R.S. 13:3201(a), but instead was concerned with R.S. 13:3201(d).[1] Furthermore, the court expressly found that the out of state manufacturer/seller regularly.engaged in a persistent course of business in Louisiana. The court in Fisher, supra, likewise was concerned with R.S. 13:3201(d) and expressly distinguished the Riverland case.
Drilling, supra, however, did involve an interpretation of R.S. 13:3201(a). In that case, a Louisiana concern furnished engineering services in Indonesia on behalf of a California corporation. A representative of the California corporation personally came to Louisiana and negotiated the contract. The numerous operational problems that arose during the six month performance period were discussed by telephone at least twice a week. There were the usual invoicing, payments and correspondence between Louisiana and California. Again, the Supreme Court expressly distinguished the Riverland case and held 283 So.2d at page 690 that:
“The facts of this case warrant our conclusion that defendant had sufficient contacts in Louisiana to subject it to the jurisdiction of our courts. We must first bear in mind that it was defendant who contacted plaintiff and came to Louisiana in order to work out the terms and conditions of the contract which was ultimately confected here when plaintiff signed the revised agreement. This business was not solicited by plaintiff. Rather, defendant came to Louisiana and sought out plaintiff. Secondly, while the contract was for services to be rendered by the plaintiff outside the State of Louisiana, it was in the furtherance of the business of defendant. Also very significant is the fact that the contract was for a period of six months which had the effect of a continuing transaction during this period. This is evidenced by the frequent telephone conversations and correspondence between the parties and the fact that defendant was billed periodically based upon the daily engineering services provided. Defendant made further contacts in this State by requesting plaintiff to review the job progress and make drilling studies based upon information supplied from defendant’s office.
“Based upon the foregoing facts, we conclude that defendant corporation was transacting business within this state within the meaning of R.S. 13:3201(a). We find that there were sufficient con *401 tacts in Louisiana to subject defendant to the personal jurisdiction of our courts without being denied due process of law or offending ‘the traditional notions of fair play and substantial justice.’ ” (Emphasis supplied)
See also, Kalvar Corporation v. General Micrographics, 318 So.2d 71 (La.App. 4th Cir. 1975); writ denied, La., 322 So.2d 773 (1975).
We also note the case of Dodson v. Fontenot, 285 So.2d 328 (La.App. 3rd Cir. 1973), in which a Louisiana purchaser went to Texas and purchased horses on only one occasion. The seller procured a judgment in Texas for the purchase price and brought suit in Louisiana on the judgment. The Third Circuit found that the Texas court could validly assert jurisdiction over the Louisiana purchaser.
The decision in Dodson is not opposite to Riverland because in Dodson the nonresident buyer traveled to the foreign state specifically to purchase and personally arranged for shipment while there.
It is clear that the Riverland ease is still controlling. However, the applicability of R.S. 13:3201(a) and due process issues must be decided by the particular circumstances and facts of each case. Drilling Engineering, Inc., supra.
We find the facts of the instant case substantially indistinguishable from those of Riverland. In fact, the instant case is stronger than Riverland for denying jurisdiction in that White has never advertised in publications principally sold and distributed here. We therefore find that White cannot be subjected to the jurisdiction of a Louisiana court.[2]
Finally, March quotes extensively in its brief a rigorous criticism of Riverland found at 34 La.L.Rev. 691, et seq. We also note criticisms at 18 Loy.L.Rev. 452 (1972) and 45 Tul.L.Rev. 1081 (1971). While the criticisms are interesting, we are constrained to follow the latest expression of our Supreme Court in this area.
For the above reasons we affirm the judgment of the trial court. Plaintiff-appellant is to pay all costs.
AFFIRMED.

. R.S. 13:3201(d) reads as follows:
“A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident’s
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this statute if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

. Citing Yankee Metal Products Company v. District, 528 P.2d 311 (Okla.1974) March argues that we should follow the Oklahoma court and subject an “active” foreign purchaser to our jurisdiction as opposed to a “passive” foreign purchaser. Without discussing the merits of such a semantical approach, we merely note that we must follow the jurisprudence of our Supreme Court in Riverland and cannot look to foreign law when there is no gap in our own law.