344 So.2d 969 (1977)
Herschel C. ADCOCK
v.
SURETY RESEARCH AND INVESTMENT CORPORATION et al.
No. 58647.
Supreme Court of Louisiana.
April 11, 1977.
*970 E. Wade Shows, J. Glenn Dupree, Adcock & Dupree, Baton Rouge, for plaintiff-applicant.
MARCUS, Justice.
This is a suit by plaintiff, Herschel C. Adcock, an attorney-at-law and resident of East Baton Rouge Parish, Louisiana, for the sum of $54,382.14 representing the balance due on a written contract for legal services performed by him in connection with the construction of a condominium project in Las Vegas, Nevada. Made defendants are Surety Research and Investment Corporation (hereinafter referred to as SRI), a Nevada corporation with its principal place of business in Los Angeles, California; Charles E. Johnson, Don C. Gunnell, Robert Burton and James R. Halford, all residents of California; and Horace B. Womack, a resident of East Baton Rouge Parish, Louisiana. All nonresident defendants excepted to the jurisdiction of the court to render a personal judgment against them and in addition three defendants, namely Gunnell, Burton and Halford, filed an exception to the manner in which service of process was effected. The exceptions to the jurisdiction of the court were sustained by the trial court and the court of appeal affirmed.[1] We granted certiorari to review the correctness of this ruling.[2]
In the latter part of March, 1973, Horace B. Womack asked plaintiff, his personal attorney, to accompany him to Las Vegas, Nevada in order that he might review certain legal documents which were to be drawn up in connection with a proposed business venture between Womack and SRI involving the construction of a condominium project in the Las Vegas area. However, upon their arrival, it was discovered that the right to purchase the property which had been chosen as the site for the project had been lost. As a result, negotiations between Womack and SRI fell through. Prior to the departure of Womack and plaintiff from Las Vegas, it was agreed that an alternative site would be selected so that the venture might continue.
In a matter of days, another piece of property was located and on April 3, 1973, Charles E. Johnson, president of SRI, arrived in Baton Rouge to negotiate a contract with Womack. The details of the agreement were negotiated and finalized in a written contract prepared by plaintiff on the following day (April 4) in Baker, Louisiana. During the course of negotiations, it was necessary for Johnson to make a long-distance telephone call for authority to increase Womack's participation in the venture with SRI from twenty-five to fifty percent. Essentially, the contract provided that a Nevada corporation would be created which would own the condominium project. In return for his furnishing credit and for exercising his influence in obtaining financing for the project, Womack was to receive fifty percent of the stock of the newlyformed corporation in addition to a fee for his services. SRI was to own the remaining fifty percent of the stock. The contract also provided that Womack would supervise the construction of the project with the authority to negotiate a construction contract, to select the general contractor, to approve all major subcontractors' bids, and *971 to substitute subcontractors. It was further agreed that plaintiff would be paid one percent of the total loan on the project in return for his drafting the legal documents necessary for completion of the project.
The contract was signed by Womack and Johnson on April 4, 1973 in Baker, Louisiana. Johnson signed both individually and as president of SRI pursuant to a resolution of the Board of Directors of said corporation. Also appearing as parties in the contract were Gunnell, Burton and Halford who, in addition to agreeing to guarantee all loans in connection with the project, joined with the other appearers in agreeing to the payment of plaintiff's fee as set forth in the contract. After the contract was signed by Womack and Johnson, the document was taken by Johnson to California where it was executed the next day (April 5) by Gunnell, Burton and Halford. The instrument was then returned to Louisiana. Subsequently, as plaintiff performed services pursuant to the agreement, he had numerous communications with Johnson.
It is plaintiff's position that the activities of the five non-resident defendants within the state of Louisiana justify an exercise of personal jurisdiction of the courts of this state over them under La.R.S. 13:3201(a). Defendants, on the other hand, assert that this single transaction is not sufficient contact with the state to satisfy "traditional notions of fair play and substantial justice" as required by International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). La.R.S. 13:3201 in pertinent part provides:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;
* * * * * *
The applicable statutory provision was designed to allow the courts of this state to exercise the broadest basis of personal jurisdiction over nonresidents permissible under the fourteenth amendment. Such an interpretation of the provision is in line with the intent of the Louisiana Legislature[3] and conforms with the national trend in favor of ever-expanding jurisdictional limits.
Specifically, the statute extends personal jurisdiction of the courts over nonresidents "transacting any business in this state" for a cause of action arising from such activity. "Transacting business" is interpreted broadly and, according to Comment (d) of the Louisiana State Law Institute appearing beneath the statute, "is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase `engaged in a business activity' of R.S. 13:3471(1)."
La.R.S. 13:3201 was enacted as a response to the decision of International Shoe Company v. State of Washington, supra, which announced a very permissive standard for the exercise of personal jurisdiction over a nonresident. In order to satisfy due process requirements, a nonresident must have "certain minimum contacts . . . such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" The due process clause demands that the contacts with the state be such as to make it reasonable to require the nonresident to defend a suit within a particular state. The test enunciated in International Shoe Company v. State of Washington, supra, was reiterated in the later decisions of McGee v. International Life Insurance Company, supra, and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The end result of this line of reasoning is that, where a given activity bears a sufficient relation with a state, jurisdiction over a nonresident may be exercised consistently with due process requirements.
*972 Because the present case does not involve the purchase or sale of products in the state, Moore v. Central Louisiana Electric Company, Inc., 273 So.2d 284 (La.1973), Fisher v. Albany Machine & Supply Company, 261 La. 747, 260 So.2d 691 (1972), and Riverland Hardwood Company v. Craftsmen Hardwood Lumber Co., 259 La. 635, 251 So.2d 45 (1971), are not applicable. Instead, the facts presented in this case revolve around a contract for services to be performed in connection with an out-of-state construction project. Consequently, Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company, 283 So.2d 687 (La.1973), is controlling.
In Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company, supra, this court followed the trend of ever-expanding limits of jurisdiction. A nonresident corporation was held to be subject to the jurisdiction of the Louisiana court for a cause of action growing out of a contract for services to be performed by a Louisiana corporation in Indonesia. The contacts which justified the exercise of the court's jurisdiction were that the defendant came to Louisiana to negotiate the contract, the contract was confected here, the services rendered by the Louisiana plaintiff furthered the business of the nonresident although not performed here, and the effect of the transaction was of a continuing nature evidenced by the frequent communications between the parties. Based upon these findings, the court found adequate reasons for subjecting the defendant to the jurisdiction of the Louisiana court.
The issue of the applicability of La. R.S. 13:3201 is basically a question of fact, the resolution of which will vary according to the circumstances of each case. Because the contacts which each of the defendants has with the forum differ, the issue as to each defendant must be dealt with separately.
Applying the above standards to the defendants, SRI and Johnson, the facts of the case before us warrant the conclusion that these two defendants had sufficient contacts with the state of Louisiana to justify an exercise of jurisdiction by our courts. In fact, the situation presented here is analogous to that presented in Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company, supra. Initially, contact was made in Louisiana with Womack, a Louisiana resident. Johnson, acting on behalf of defendant corporation as well as on his own behalf, came to Louisiana for the specific purpose of negotiating with Womack and formalizing the business arrangement among the parties. The contract was negotiated, drafted and executed by these parties in Louisiana. It provided for a joint venture between SRI and Womack with each party owning fifty percent of the stock of the newly-formed corporation. Certain authority to bind SRI was delegated to Womack in that he was empowered to enter into construction contracts, to appoint a general contractor, and to deal with subcontractors. Plaintiff, a Louisiana attorney, was retained by the parties to draft the legal documents necessary for completion of the project. Although the project was to be constructed outside of the state, the arrangement embodied a continuing transaction over a period of time in the future with a substantial amount of plaintiff's legal services being rendered in Louisiana. During the period that followed the confection of the contract, there were numerous communications between plaintiff and Johnson. These communications evidence the continuous nature of the venture. Also illustrative of the nature of the relationship among the parties is the fact that there were several subsequent agreements among the parties which implemented the original contract. Basically, these pertained to the furnishing of letters of credit and to the procuring of loans for the project. The fact that the contract was signed by the remaining defendants outside of Louisiana and therefore arguably might be considered a California contract is merely a single contact to be examined relative to the jurisdictional issue. Resolution of the jurisdictional issue depends upon the degree of contract which *973 the nonresident defendants have with the forum state.
Based upon the foregoing facts, we conclude that the defendants, SRI and Johnson, were transacting business in this state within the meaning of La.R.S. 13:3201(a). Clearly, there were sufficient contacts to satisfy "traditional notions of fair play and substantial justice" demanded by the fourteenth amendment.
As for the remaining individual defendants, namely Gunnell, Burton and Halford, we reach a different result. The record does not manifest any contact by these defendants with the state of Louisiana. They were never present in the state either directly or indirectly through an agent, for the record is devoid of any evidence which would indicate that Johnson acted as an agent for them. The contract itself bears no such showing and the fact that it was taken to California for their signatures is a strong indication that Johnson had no authority to bind them in any manner. In the absence of any connection with the state, an exercise of personal jurisdiction over these three defendants would violate the due process standards set forth in International Shoe Company v. State of Washington, supra, and McGee v. International Life Insurance Company, supra. Therefore, we conclude that these defendants are not subject to the jurisdiction of the Louisiana court. This holding renders unnecessary an examination of the exception to the sufficiency of service of process raised by these defendants.

DECREE
The judgment of the court of appeal affirming the district court in sustaining the exception to the court's jurisdiction in personam as to Johnson and Surety Research and Investment Corporation is reversed, and the case is remanded for trial on the merits. The judgment of the court of appeal affirming the district court in sustaining the exception to the court's jurisdiction as to Gunnell, Burton and Halford is affirmed.
NOTES
[1] 336 So.2d 265.
[2] 339 So.2d 18.
[3] See Comment (a) in West's LSA-R.S. 13:3201; McMahon, Civil Procedure, 25 La.L. Rev. 28 (1964).