**SOUTHERN INVESTORS II and Southern Investors Management Co., Inc.**

v.

**COMMUTER AIRCRAFT CORPORATION.**

**Civ.A.No. 81–364–B.**

United States District Court,
M. D. Louisiana.

Aug. 18, 1981.

Phillip W. Preis, Baton Rouge, La., for plaintiffs.

H. Evans, Scobee, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., David A. Lee, Isicson, Steinmetz & Lee, Washington, D. C., for defendant.

POLOZOLA, District Judge.

Plaintiffs, Southern Investors II (Southern) and Southern Investors Management Company, Inc. (SIMCO), have filed this diversity action seeking damages for breach of contract by the defendant, Commuter Aircraft Corporation, (CAC). Southern is a Louisiana partnership while SIMCO is a Louisiana corporation. Defendant, CAC, is a Maryland corporation having its principal place of business in Ohio but also does business in California. Plaintiffs claim that CAC requested Paine, Webber, Jackson and Curtis, an investment banking group for CAC, to seek a lender for a working capital loan to assist CAC in the development, manufacture and marketing of a commuter aircraft. Initially, CAC had applied with the United States Department of Commerce, Economic Development Administration (EDA), for financial assistance in the form of a guarantee of the working capital loan. Southern and SIMCO, acting upon the request of the investment banking group as potential lenders for the working capital loan, then met several times with EDA and CAC representatives to negotiate the loan and guarantee agreement. The EDA thereafter agreed to provide a ninety percent (90%) guarantee of the working capital loan. On October 29, 1980, Southern made a commitment to purchase a thirty-eight million dollar ($38,000,000) loan to be made to CAC, with SIMCO as lead service lender. On November 3, 1980, CAC executed and returned the commitment agreement to the plaintiffs. One condition of the commitment agreement provided for the payment of one-half (½) of one percent (1%) of the principal loan amount commitment fee to SIMCO within ninety (90) days of the execution of the agreement. In this case plaintiffs contend the commitment fee of one hundred ninety thousand dollars ($190,000) was not paid within the ninety day period and has not been tendered as of the date of the institution of this suit.

This matter is now before the Court on the motion of the defendant, CAC, to dismiss the complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for failure to establish personal jurisdiction. In the alternative the defendant seeks to transfer this action to the United States District Court for the District of Columbia or to the United States District Court for the District of Maryland. Plaintiffs have filed an opposition to this motion. Defendant contends that it has not had sufficient contacts with the state of Louisiana for the Court to constitutionally exercise personal jurisdiction over it under the facts of this case. Defendant further contends that the only possible contacts it had with the plaintiffs were telephone conversations with the plaintiffs, both within and outside the state of Louisiana, and personal negotiations with the plaintiffs outside the state.

Plaintiffs contend that this Court has personal jurisdiction over the defendant, CAC, because the defendant transacted business in the state of Louisiana within the intent and meaning of the Louisiana Long-Arm Statute, La.R.S. 13:3201. The plaintiffs assert four grounds in support of this contention:

1) CAC sought out the plaintiffs for a loan in connection with the manufacture of a commuter aircraft, thereby availing itself of the protection and benefits of Louisiana law.

2) The commitment agreement was prepared by Southern in Louisiana and it provided for numerous obligations to be undertaken by Southern in Louisiana.

3) The commitment agreement provides for a continuing relationship between the defendant and the plaintiffs as a result of the contractual agreement.

4) Substantial services would have been provided by the plaintiffs to the defendant had the contract not been breached.

In determining whether CAC is subject to the *in personam* jurisdiction of this Louisi-

ana federal court, the Court must follow the two-step analysis set forth by the Fifth Circuit Court of Appeals in *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5 Cir. 1973). See also *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630 (5 Cir. 1980), rehearing en banc denied, 631 F.2d 732 (5 Cir. 1980), cert. denied, —— U.S. ——, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981). Thus, the Court must first determine whether the defendant is amenable to service under the Louisiana Long-Arm Statute. Louisiana law controls this determination. *Standard Fittings Co. v. Sapag S.A.*, supra; *Jetco Electronic Industries, Inc. v. Gardiner*, supra; *Barrett v. Browning Arms Co.*, 433 F.2d 141 (5 Cir. 1970); *Tetco Metal Products, Inc. v. Langham*, 387 F.2d 721 (5 Cir. 1968). If the requirements of the Louisiana statute are satisfied, then federal law must be applied to determine whether assertion of jurisdiction over the defendant comports with due process. *Standard Fittings Co. v. Sapag, S.A.*, supra; *Jetco Electronic Industries, Inc. v. Gardiner*, supra; *Barrett v. Browning Arms Co.*, supra; *Tetco Metal Products, Inc. v. Langham*, supra; *Arrowsmith v. United Press International*, 320 F.2d 219 (2 Cir. 1963).

The plaintiffs seek to invoke the provisions of La.R.S. 13:3201 et seq. to obtain jurisdiction over the "person" of the defendant. The statute provides in part:

"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

(a) transacting any business in this state; ..." R.S. 13:3201(a).

The comments of the Louisiana State Law Institute immediately following the text of the statute indicate that the term "transacting business" "is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase 'engaged in business activity' of R.S. 13:3471(1)." *Adcock v. Surety Research and Investment Corp.*, 344 So.2d 969, 971 (La.1977); *Thompson v. Great Midwest Fur Co.*, 395 So.2d 840, 843 (La.App. 1 Cir. 1981).

■ It is now clear that the intent of the Louisiana Long-Arm Statute is to permit the exercise of in personam jurisdiction to the full limits of due process in contract cases as well as tort cases. In other words, the statutory inquiry is synonymous with the due process inquiry. *Standard Fittings Co. v. Sapag, S.A.*, supra at 638; *Adcock v. Surety Research and Investment Corp.*, supra at 971; *Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co.*, 283 So.2d 687 (La.1973); *Thompson v. Great Midwest Fur Co.*, supra at 843; *Soileau v. Evangeline Farmers Co-op*, 386 So.2d 179 (La.App. 3 Cir. 1980); *Latham v. Ryan*, 373 So.2d 242 (La.App. 3 Cir. 1979); *Ingram Contractors, Inc. v. Rowley*, 360 So.2d 593 (La.App. 4 Cir. 1978); *Mayeux v. Hughes*, 333 So.2d 273 (La.App. 1 Cir. 1976); *Aucoin v. Hanson*, 207 So.2d 834 (La.App. 3 Cir. 1968). Therefore, it is settled that if a business activity satisfies the requirements of due process, it ipso facto satisfies the "transacting business" requirements of the Louisiana Long-Arm Statute.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution limits the power of this Court in exercising jurisdiction over the person of a nonresident defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

The Fifth Circuit Court of Appeals has recently referred to a two-prong test in determining whether a nonresident defendant is subject to suit consistent with due process. Thus, in *Standard Fittings Co. v. Sapag, S.A.*, supra:

"In *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974)[24], [footnote omitted] this court described a two-part test for determining whether the exercise of in personam jurisdiction would deprive a defendant of due process: 'First, "there must be some minimum contact with the state which results from an affirmative act of the defendant," i. e., purposeful activity. Secondly, "it must be fair and reasonable to require

the defendant to come into the state and defend the action."' 495 F.2d at 494. In a footnote to this two-part test, the court identified several factors which various courts have used in determining whether the exercise of personal jurisdiction over a nonresident corporation comports with due process: the quantity of contacts, the nature and quality of the contacts, the connection of the cause of action to the contacts, the interest of the forum state in providing a forum for its residents, the convenience to the parties, and the nature and character of the business. 495 F.2d at 494 n. 17.

Further explaining the first part of the two-prong test, the court in *Product Promotions* stated that purposeful activity of a defendant within the forum state implies that there must be some activity by the defendant and that it must 'support an inference that the nonresident defendant purposefully availed himself of the benefits of conducting business in the forum.' 495 F.2d at 495. The court went on to say that 'even if the defendant performs no physical act within the State, activities outside the State can provide adequate contacts if they have reasonably foreseeable consequences within the State.' 495 F.2d at 496. And finally, with respect to the purposeful activity prong of the test, the court said, '[t]he operative consideration is that the defendant's contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise.' 495 F.2d at 496.

*Product Promotions* refined the second prong of the test which demands that it not be 'unfair or unreasonable to require the nonresident to defend the suit in the forum.' 495 F.2d at 497–98. Among the factors to be considered in evaluating this part of the test are 'the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and basic equities.' 495 F.2d at 498." 625 F.2d at 642–643.

■ It is clear that one occurrence or contract, whether it be in contract or tort, may satisfy the "minimum contacts" test previously characterized herein. *Aucoin v. Hanson*, supra. Also see *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9 Cir. 1980); *Marquest Medical Products, Inc. v. EMDE Corp.*, 496 F.Supp. 1242 (D.Colo.1980). "A foreign act having an effect in the forum may satisfy the minimum contact requirement. . . . But in each case the defendant must have done some act by which it purposely avails itself of the benefits and protection of forum law." *Kramer Motors, Inc. v. British Leyland, Ltd.*, supra at 1178, citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and *Kulko v. Superior Court*, supra.

■ The burden is on the plaintiffs to establish jurisdiction when challenged by the defendant. *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134 (5 Cir. 1980); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5 Cir. 1974). The question of satisfying the "minimum contacts" criteria as required by the Louisiana Long-Arm Statute and the Due Process Clause is an issue of fact, the determination of which must rest upon the particular circumstances of each case. *Adcock v. Surety Research and Investment Corp.*, supra; *Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co.*, supra; *Thompson v. Great Midwest Fur Co.* supra; *Thibodeaux v. King–Wilkinson, Inc.*, 386 So.2d 189 (La. App. 3 Cir. 1980); *Soileau v. Evangeline Farmer's Co-op*, supra; *March Chemical Co., Inc. v. White Cross Laboratories, Inc.*, 339 So.2d 398 (La.App. 1 Cir. 1976), writ refused, 341 So.2d 895 (1977). In the instant case, the plaintiffs strongly urge that "minimum contacts" exist between the defendant and the State of Louisiana because (1) the defendant entered into a commitment agreement whereby the defendant borrowed thirty-eight million dollars ($38,-000,000) from Louisiana residents; (2) there is a continuing relationship created in servicing the loans; and (3) the benefit and protection of Louisiana laws due the defendant and the plaintiffs as a result of the

contract partly executed in Louisiana by Louisiana lenders.

On the other hand, the defendant strenuously argues that the commitment agreement was negotiated in New York and the District of Columbia, executed in the District of Columbia, and called for the defendant to receive the loan proceeds from banks in New York and/or Ohio. Further, the defendant maintains that it has had no contacts with Louisiana in any manner. The defendant has submitted the affidavit of Anita Isicson, Secretary and Corporate Counsel of CAC, which sets forth the following facts: (1) CAC has never engaged in nor qualified to do business in Louisiana; (2) CAC has not appointed an agent for service of process in Louisiana; (3) the defendant was introduced to the plaintiffs in New York, New York; (4) the commitment agreement was amended and executed in Washington, D.C.; (5) negotiations among the investment banking group, CAC, and the plaintiffs took place in Washington, D.C. or New York; and (6) the telephone conversations that did take place were both within and beyond the State of Louisiana.

It is now clear that the execution of a contract outside the state, or the finalization or consummation of a contract outside the state is not controlling nor required for a court to exercise in personam jurisdiction. *Standard Fittings Co. v. Sapag, S.A.,* supra; *Adcock v. Surety Research and Investment Corp.,* supra. In *Adcock,* there was involved a contract for the construction of a condominium in Nevada. However, the suit derived from the nonpayment of plaintiff's attorney's fees for legal services. The contract was negotiated and finalized in Louisiana. It was executed by the president of the corporation in Baker, Louisiana. The next day the contract was taken to California where it was executed by the members of the Board of Directors. The contract was then returned to Louisiana. The Court concluded that the corporation and its president had sufficient contacts to be considered as "transacting business" in Louisiana. As to the defendants who were members of the Board of Directors, the Court found that they were not subject to the jurisdiction of the Louisiana courts. The Court stated:

"Although the project was to be constructed outside of the state, the arrangement embodied a continuing transaction over a period of time in the future with a substantial amount of plaintiff's legal services being rendered in Louisiana . . .

The fact that the contract was signed by the remaining defendants outside of Louisiana and therefore arguably might be considered a California contract is merely a single contract to be examined relative to the jurisdictional issue. Resolution of the jurisdictional issue depends upon the degree of contact which the nonresident defendants have with the forum state. . . .

As for the remaining individual defendants, namely, Gunnell, Burton and Halford, we reach a different result. The record does not manifest any contact by these defendants with the state of Louisiana. They were never present in the state either directly or indirectly through an agent, . . .

In the absence of any connection with the state, an exercise of personal jurisdiction over these three defendants would violate the due process standards set forth in *International Shoe Company v. State of Washington* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95], supra, and *McGee v. International Life Insurance Company,* supra." 344 So.2d at 972–973.

■ Thus, the issue before this Court is whether the actions of the investment banking group in seeking out the plaintiff as a lender and the subsequent loan agreement entailing numerous provisions including servicing of the loan, are sufficient to satisfy "minimum contacts" requirements.

After carefully considering the facts and circumstances of this case, the Court finds that the defendant, CAC, possessed the degree of meaningful connection with Louisiana as required by the Louisiana Long-Arm Statute and the Due Process Clause of the United States Constitution to allow the Court to have in personam jurisdiction over the defendants.

The defendant contracted with the plaintiffs involving a rather large loan of thirty-eight million dollars ($38,000,000). The investment banking group, undoubtedly acting as agent for the defendant, sought out and contacted the plaintiffs in reference to this loan. Regardless of the fact that the parties never did meet in Louisiana for negotiation purposes or otherwise, the parties agreed to the terms of a contract which provides for services for the duration of the loan, and which the defendant knew would further and benefit the operation, development and manufacture of its commuter aircrafts. The Court finds that under the facts of this case it was not necessary that the agreement be negotiated or finalized in Louisiana in order for the Court to have personal jurisdiction over the defendant. The "presence" of the nonresident defendant is not controlling. The fact that the defendant's agent contacted the plaintiff in reference to obtaining a loan and the fact that the contract between the parties in reference to this loan calls for a continuing relationship throughout the life of the loan, are contacts of a "degree" which this Court finds sufficient for "minimum contacts" purposes. See *Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co.,* supra.

Finally, this Court must distinguish the present case from the line of cases involving a nonresident buyer of goods or services. See *Riverland Hardwood Co. v. Craftsman Hardwood Lumber Co.,* 259 La. 635, 251 So.2d 45 (1971); *March Chemical Co., Inc. v. White Cross Laboratories, Inc.,* supra; *Dibert, Bancroft & Ross Co. v. Aetna-Stand. Eng. Co.,* 336 So.2d 327 (La.App. 1 Cir. 1976); *Kalvar Corporation v. General Micrographics,* 318 So.2d 71 (La.App. 4 Cir. 1975), writ denied 322 So.2d 773 (1975). These cases refused to find personal jurisdiction over the nonresident purchaser of goods or services due to the "degree of contact" or lack thereof resulting from a single transaction of this nature as opposed to a transaction "continuing in nature". As noted earlier, although a single transaction may be involved in this case, the facts and nature of the transaction involved herein

satisfy the due process requirements of the United States Constitution. Therefore, the Court finds that the Court does have personal jurisdiction over the defendant under the facts and circumstances of this case.

The Court must now consider defendant's alternative request to transfer this matter to the United States District Court in Maryland or the District of Columbia. 28 U.S.C. § 1404(a) authorizes the transfer of a civil action from one federal forum in which the venue is proper to another federal forum in which venue is proper and "where it might have been brought", if the court determines that the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice". 28 U.S.C. § 1404(a); *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

 It is well settled that the court has wide discretion in determining whether to transfer a case for the convenience of parties and in the interest of justice. *Weber v. Coney,* 642 F.2d 91 (5 Cir. 1981); *Bearden v. United States,* 320 F.2d 99 (5 Cir.1963), cert. denied, 376 U.S. 922, 84 S.Ct. 679, 11 L.Ed.2d 616 (1964). Although the court does have discretion to transfer a case, the defendant must make a convincing showing of the right to have the case transferred since § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack,* supra; *American Standard Inc. v. Bendix Corp.,* 487 F.Supp. 254 (W.D.Mo.1980).

 The most important factor in passing on a motion for transfer under § 1404(a) is the convenience of witnesses. *American Standard, Inc. v. Bendix Corp.,* supra at 262; 15 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3851, l.c 264 (1976). However, the moving party must make a specific showing of the necessary witness and what their testimony will be. The affidavit submitted by the defendant has failed to meet this burden. The defendant has simply made a bold assertion that CAC and EDA personnel which are likely to be defense witnesses are located in

Washington, D.C. Moreover, whether a case should be transferred in the interest of justice requires several considerations including, relative ease of access to sources of proof, availability of the compulsory process for attendance of unwilling witnesses, and all other practical considerations that make the trial of the case easier, expeditious and inexpensive. *ROC, Inc. v. Progress Drillers, Inc.*, 481 F.Supp. 147 (W.D.Okl.1979). The defendant contends that the documents relevant to this litigation are in Washington, D.C. and that Washington is within 100 miles of Maryland. However, this Court agrees with the plaintiffs that the defendant has shown nothing more than that a transfer would shift any possible inconvenience from the defendant to the plaintiffs.

After reviewing the entire record in this case the Court finds that defendant's motion for a change of venue should be denied.

Therefore:

IT IS ORDERED that the defendant's motion to transfer this action to the United States District Court for the District of Maryland or to the United States District Court for the District of Columbia be and it is hereby DENIED.