207 So.2d 834 (1968)
Lindsey J. AUCOIN, Plaintiff-Appellee,
v.
Herbert C. HANSON, Defendant-Appellant.
No. 2255.
Court of Appeal of Louisiana, Third Circuit.
February 28, 1968.
Rehearing Denied March 25, 1968.
*835 Kenneth Boagni, Jr., Opelousas, for defendant-appellant.
Kearney Tate, Eunice, for plaintiff-appellee.
Before FRUGEé, HOOD, and CULPEPPER, JJ.
FRUGEé, Judge.
This is an action in redhibition in which the plaintiff, Lindsey Aucoin, seeks the recovery of the purchase price of a thoroughbred mare, which was sold to him by the defendant, Herbert Hanson. The defendant was a resident of Mississippi whose only relevant transactions and contacts with this state were his horse dealings.
Defendant was served with process via certified mail in Mississippi. He then made a special appearance for the purpose of excepting to the court's jurisdiction "ratione materiae" and "ratione personae." The trial judge received evidence on this issue and subsequently overruled the objections filed by the defendant. Thereafter, the defendant answered the plaintiff's petition, a trial was had on the merits, and the trial court rendered judgment in favor of the plaintiff in the sum of $499.99.
A suspensive appeal[1] was sought by the defendant, limited to the question of *836 personal jurisdiction over him; and therefore, out further discussions will be limited to the facts and issues relevant only to the question of jurisdiction.
The determination of this case rests upon the interpretation of the Louisiana "long-arm" statute, R.S. 13:3201 and 3202, which read in part:
§ 3201: PERSONAL JURISDICTION
 OVER NONRESIDENTS
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to cause of action arising from the nonresident's
(a) transacting any business in this state;
(b) contracting to supply services or things in this state; * * *."
§ 3202:
"When personal jurisdiction over a nonresident is based solely upon R.S. 13:3201, only a cause of action arising from acts or omissions enumerated therein may be asserted against him."
The design of the Louisiana long-arm statute was to reap the fullest benefits from United States Supreme Court cases in which the due process requirements under the Federal Constitution have been relaxed, as such pertain to personal jurisdiction in civil suits. See McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The intent of the long-arm statute was to provide the Louisiana resident with maximum protection of Louisiana courts from injury occasioned him through the acts or omissions of a non-resident when that non-resident has "minimal contacts" with this state. As stated by the late Henry G. McMahon in his article, Louisiana Legislation Of 1964Personal Jurisdiction Over Non-Residents, 25 La.L. Rev. 28, 32 (1965):
"With the adoption of the Personal Jurisdiction over Non-Resident Statute, it is believed that the courts of Louisiana now possess all of the jurisdiction in personam over all types of non-residents permitted by the decisions of the United States Supreme Court."
The question of the applicability of R.S. 13:3201 is basically an issue of fact, the determination of which must rest upon the peculiar circumstances of each individual case. See Home Gas and Fuel Company v. Mississippi Tank Company, 143 So.2d 641 (La.App. 3rd Cir., 1962).
The relevant facts as found by the trial court are as follows:
The defendant, Mr. Hanson, raised and raced horses. He is a resident of Mississippi and has no horses or other property in Louisiana. He has been a member of the Louisiana Thoroughbred Breeders Association. He has purchased horses from Louisiana on prior occasions; in fact, the thoroughbred mare in consideration was originally purchased by him from a Louisiana owner. He was issued an owners' license by the Louisiana State Racing Commission. He has been consistently racing his horses in Louisiana at the Fair Grounds in New Orleans and at Evengeline Downs in Lafayette.
Plaintiff was in the market for a thoroughbred mare for breeding purposes. In Eunice he met a Mr. Lee Guillory, who represented himself as being a horse trainer and who further stated that he had trained horses for the defendant, Mr. Hanson. During their conversation Mr. Guillory volunteered the information that Mr. Hanson had some mares and that he wanted to sell a particular one. Mr. Guillory quoted plaintiff a price which plaintiff felt was too high and then Mr. Guillory returned to Eunice *837 about a week later and told plaintiff that defendant had another mare which he would sell for $500.00.
As a result of these transactions through Mr. Guillory, from his home in Eunice, plaintiff telephoned defendant and talked with him concerning the purchase of this particular mare. Plaintiff did not recall whether he had one or two long distance conversations with Mr. Hanson. But he did testify that all the particulars of the agreement with Mr. Hanson were agreed upon over the telephone. The only reservation made by the plaintiff from the conversations with defendant was that he would have no obligation to purchase the horse if it was not in good physical condition and as represented by defendant in his telephone conversation with plaintiff. Plaintiff agreed that he would pick up the horse himself; and so he drove to Mississippi with a trailer, looked at the mare, tendered a check for $400.00, and brought the horse back to Eunice. The agreement as to the price of the mare was that were the mare with colt at the time of purchase, the price was to be $500.00, and should the mare not be with colt at the time of the purchase, the price of the mare would be $400.00. Plaintiff paid $400.00 in Mississippi, and brought the mare back to Eunice. Upon returning to Eunice, plaintiff was to have the mare inspected to determine whether or not she was with colt. This the plaintiff did with a preliminary inspection by a veterinarian, the result of which indicated that the mare was with colt. Therefore, plaintiff sent the defendant a check for $100.00 pursuant to their agreement. Subsequently, it was determined that the mare was without colt at the time, which discovery resulted in a thorough examination of the mare. From this examination it not only appeared that the mare was without colt, but that the mare was incapable of bearing, due to injuries to her reproductive organs. Plaintiff then notified defendant of the fact that he intended to return the horse and requested recision of the sale and return of the $500.00 he had paid for that mare. Upon receiving no reply from the defendant, plaintiff filed this suit for recision of the sale in the city court of Eunice.
The trial court found that defendant had sufficient business contacts with this State to render him subject to R.S. 13:3201 (a). This was based upon the fact that defendant conducted substantial horse dealings in Louisiana and upon the trial court's finding that Mr. Guillory was a horse trainer for the defendant and that Mr. Guillory conducted preliminary negotiations with plaintiff in defendant's behalf in Louisiana.
The defendant-appellant strongly urges that this latter finding was error on the part of the trial court because the records disclosed that Mr. Guillory was not working for the plaintiff at the time of the transactions in question here. But it is not essential to the existence of an agency relation pertaining to a particular object for the agent to be an employee of the principal or for the agent to receive compensation for his services.
The record supports the trial court's conclusion that Mr. Guillory was acting in behalf of or as an agent of defendant pertaining to this particular transaction as evidenced from the facts given above. Thus, we are unable to say that the trial court's conclusion was manifestly erroneous, notwithstanding that defendant denied even knowing Mr. Guillory in his answers to written interrogatories submitted to him.
Defendant-appellant urges that because the contract in question here was perfected in Mississippi, and because plaintiff brought the horse into Louisiana himself, Louisiana could not acquire personal jurisdiction over him.
The record supports the proposition that the agreement here in question was perfected in all significant regards in a telephone conversation between Mr. Hanson in Mississippi, and Mr. Aucoin in *838 Louisiana. It is impossible to determine which party made the final acceptance of the terms of the other; nor do we feel that determination to be essential. The contract appears to be as much a "Louisiana contract" as it is a "Mississippi contract". The initial preliminary negotiations occurred in this state and the final payment on the contract was mailed from this state. Further, the object of the contract was intended for use in Louisiana. Concededly, the state of Mississippi also has substantial contacts with the transactions; but this is not the question before us.
This argument appears to have more significance in determining if § 3201 (b) can apply, which section gives this state jurisdiction as a result of defendant's "contracting to supply services or things in this state."[2] But since we have found § 3201(a) to apply, it is unnecessary for us to decide if § 3201(b) might also apply so as to give our courts jurisdiction.
Appellant further argues that this sale was but an isolated transaction and did not relate to defendant's prior dealings with horses in Louisiana. We find it unnecessary, however, under the long-arm statute, for the particular transaction creating the cause of action in favor of plaintiff to be a direct and immediate result of defendant's business transactions in this state, so long as his prior business activities are related to and are of the same general nature as the one out of which plaintiff's claim arises. In Home Gas and Fuel Co. v. Mississippi Tank Co., 143 So.2d 641 (La.App. 3rd Cir., 1962), we found jurisdiction over a non-resident corporation, based upon prior solicitation in this state, as to a contract which did not directly arise out of that corporation's solicitations or activities in this state. Also appropriate to the instant case is language quoted in that case at page 645:
"The evidence makes it clear that the Mississippi Tank Company, Inc., has on occasion, and through its agents and representatives, transacted business in the State of Louisiana. However, it is also established by the evidence that the tank involved in this suit was ordered, manufactured, and delivered as set forth in the allegations of the exception, that is to say, without any contract whatever with the State of Louisiana beyond the fact that it was ordered in a telephone call from Louisiana to Hattiesburg, Mississippi."
Compare Babineaux v. Southeastern Drilling Company, 170 So.2d 518 (La.App. 3rd Cir., 1965) and cases discussed therein.
For the foregoing reasons, it is our opinion that the defendant was engaged in transacting some business in the State of Louisiana relating to the dealings of horses and, specifically, preliminary transactions pertaining to the sale of the mare involved in this case. Therefore, we find that jurisdiction in personam was properly obtained under the provision R.S. 13:3201 (a).
The judgment of the trial court is affirmed at the defendant-appellant's costs.
Affirmed.
HOOD, Judge (dissenting).
I am unable to agree with my esteemed colleagues in the conclusions which they have reached, both as to the law and as to the facts.
*839 The majority states that the trial court based its judgment partially upon a finding "that Mr. Guillory was a horse trainer for the defendant and that Mr. Guillory conducted preliminary negotiations with plaintiff in defendant's behalf in Louisiana." And, the majority then concludes that "The record supports the trial court's conclusion that Mr. Guillory was acting in behalf of or as an agent of defendant pertaining to this particular transaction as evidenced from the facts given above." I do not think the trial judge made such a finding. If he did, then that finding clearly is contrary to the evidence which was presented in the case.
In the trial judge's written reasons for judgment the only reference which he makes to Guillory is the following: "Mr. Aucoin was contacted in Louisiana by one H. Lee Guillory who represented himself as a trainer for Mr. Hanson and partial payment on the mare was made by mailing a check from Eunice." It is on this statement that the majority obviously bases its conclusion that the trial judge found an agency relationship between Guillory and defendant.
Neither Mr. Guillory nor defendant Hanson testified at the trial. Hanson, however, did file answers to written interrogatories which were propounded to him, and in his answers he stated categorically, "I have no business relationship with Harry L. Guillory, nor do I know a Harry L. Guillory, or any Harry Guillory."
Plaintiff Aucoin and Dr. Howard H. Hargroder, the veterinarian who examined the horse, were the only witnesses who testified at the trial. Dr. Hargroder knew nothing about the transaction between the parties. And we think plaintiff's testimony, in itself, shows that Guillory did not represent that he was an agent or representative of Hanson. Plaintiff testified with reference to conversations with Guillory:
"* * * he told me that he had done some training and several otherfor some several months prior to this before, he had been in the contracting business and had gone into the race horse business and come back and had gone in the contracting business again and I think he was anticipating going back into the race horse business at that time. * * * He at this time mentioned to me that he had a friend of his over in Pass Christian, Mississippi, that had some mares that he thought would be interested in selling."
I think the evidence is clear, and in fact is uncontradicted, to the effect that Guillory had no business relationship with Hanson at all, that Hanson did not even know him, and that Guillory did not serve as an agent or representative of defendant Hanson in the sale of the mare involved in this suit.
The facts, briefly stated, are that plaintiff was informed by Guillory, who had no connection with defendant at all, that defendant had some mares which Guillory thought he would be interested in selling. After receiving this information plaintiff, while at his home in Louisiana, placed and completed a long distance telephone call to defendant in Mississippi and inquired of defendant whether he had a mare to sell. Plaintiff then made two trips to defendant's farm in Mississippi to examine a mare which defendant had indicated was for sale, and it was on the second trip to that state that he decided to purchase it. He paid defendant $400.00 when the agreement was entered into in Mississippi, and then plaintiff brought the mare back to his home in Louisiana. Several days later plaintiff, thinking the mare was then in foal, mailed to defendant a check for the additional agreed sum of $100.00. Defendant Hanson did not come to Louisiana at any time, and no part of the agreement was completed in this state. On the basis of those facts the majority holds that the contract appears to be as much a "Louisiana contract" as it is a "Mississippi contract."
*840 I attach no significance to the fact that defendant was a member of the Louisiana Thoroughbred Breeders' Association prior to March 31, 1964, that he had previously purchased three horses which had been foaled in Louisiana (none of which were shown to have been purchased in this state), that he was issued an owner's license by the Louisiana Racing Commission for the 1965-1966 season (the sale involved here having been completed in April, 1965), and that he has raced horses at the New Orleans and Lafayette race tracks. Defendant was engaged in the business of "wholesale fruit and produce dealer" in Mississippi. He was not engaged in the business of buying and selling horses in Louisiana. The evidence does not show that he ever bought a horse in this state, and it establishes without contradiction that the only horse he ever sold to a person from Louisiana was the mare which is involved in this suit.
I agree with the majority that LSA-R.S. 13:3201-3207 was adopted to vest the courts of this state with all of the jurisdiction in personam over nonresidents which is permitted by the Constitution and by International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. I also am in accord with the view which has been expressed frequently that Louisiana has a legitimate interest in providing every citizen of this state who sustains an injury with a forum in which his claim arising out of that injury may be adjudged. I feel, however, that even under the rules applied in the two cited cases the defendant in the instant suit has not had sufficient contact with the State of Louisiana to permit the Louisiana long arm statute to be extended to him.
The rule, as stated in the International Shoe Company case, is:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain mimimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
In the McGee case the United States Supreme Court held that in order to subject a nonresident defendant to a judgment in personam, if he be not present within the territory of the forum, it is essential that "he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
Recently, in Moore v. Evans, 196 So.2d 839 (La.App. 3d Cir., 1967) where the issues presented were similiar to those presented here, we held that the Louisiana defendant had not had sufficient contact with the State of Texas to entitle a Texas court to obtain personal jurisdiction over him by substituted service.
Other cases which I think are applicable are Bowlero, Inc. v. Allen, 205 So.2d 196 (La.App. 2d Cir., 1967); Babineaux v. Southeastrn Drilling Corporation, 170 So.2d 518 (La.App. 3d Cir., 1965); Home Gas & Fuel Company v. Mississippi Tank Company, 143 So.2d 641 (La.App. 3d Cir., 1962); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283; Buckley v. New York Times Company, 5 Cir., 338 F.2d 470.
If the rule applied by the majority in this case is finally held to be the correct one, then I think we will have to face the fact that a rule similar to the one which we apply here may also be applied by the courts of other states. We will have to recognize and enforce judgments rendered by courts of other states against absent Louisiana residents, contrary to the decision which we rendered in Moore v. Evans, supra. It will logically follow that a resident of Mississippi may sue a resident of Louisiana in a Mississippi court, and he may obtain personal jurisdiction over the absent Louisiana defendant by substituted service of process, *841 if the Mississippi resident has merely discussed some feature of the transaction with the defendant by long distance telephone. I do not think that the United States Supreme Court intended for the rule announced in the International Shoe Company and the McGee cases to go that far.
I think it will offend our "traditional notions of fair play and substantial justice" if we permit plaintiff in the instant suit to maintain this action in a Louisiana court against the absent, nonresident defendant, whose only contact with the State of Louisiana was by means of one long distance telephone call.
For the reasons herein set out I respectfully dissent from the majority opinion.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted. SAVOY, J., dissents from the refusal to grant a rehearing for the reasons assigned in the dissenting opinion of Judge Hood.
NOTES
[1] Although appeal bond was for the purpose of a suspensive appeal and although a suspensive appeal was granted by the trial judge, the amount of the appeal bond was only $500.00. The amount of the judgment had not been deposited into the registry of the court, and therefore, under C.C.P. Art. 2124 the bond for a suspensive appeal must be in the amount of one and one-half times the award made by the trial court in its judgment. The trial court has no discretion in such matters, and therefore, had the defendant desired a suspensive appeal, it would have been necessary for him to supply bond in the sum of $750.00, rather than $500.00, as was done here. Although the appeal cannot be deemed as a suspensive appeal, it remains valid as a devolutive appeal, and will be treated as such.
[2] In order for § 3201(a) to apply it is probably necessary that defendant or his agent be present in Louisiana while transacting that business relative to which the cause of action arises. For § 3201(b) to apply, the contract may be perfected outside this state, but the object of the contract must be one which somehow acquires situs in Louisianai. e., sent into this state, or supplied within this state. See generally Comment, Jurisdiction In Personam over Contracts With Nonresidents, 26 La. L.Rev. 372 (1966); Comment, Personal Jurisdiction over NonresidentsThe Louisiana "Long-Arm" Statute, 40 Tu.L. Rev. 366 (1966).