418 So.2d 698 (1982)
Vera BUCKBEE, INDIVIDUALLY AND AS the ADMINISTRATRIX OF the SUCCESSION OF William Buckbee, and on Behalf of the Minor, Larry Dean BUCKBEE, Plaintiff-Appellant,
v.
AWECO, INC., et al., Defendants-Appellees.
No. 82-113.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1982.
Rehearing Denied September 8, 1982.
*699 Baggett, McCall, Singleton & Ranier, Drew Ranier, Lake Charles, for plaintiff-appellant.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Bret L. Barham, Raggio, Cappel, Chozen & Berniard, Richard B. Cappel, Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Plauche, Smith, Hebert & Nieset, A. Lane Plauche, Meredith T. Holt, Lake Charles, for defendants-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
This is a tort suit by the survivors of William Buckbee arising out of a fatal job related accident.
On January 15, 1980, decedent, William Buckbee, and Mr. Roosevelt Vincent, employees at Lake Charles Refining Company, began to remove a plug from a coil on a used crude petroleum heater. The heater was not in use but had been washed prior to this operation. The removal of the plug was preparatory to an inspection of the heater coil. The inspection was to determine whether the coil was free from blockages and if the heater could be put into operation in the refining process. The plugs, due to their exposure to extreme heats in the refining process over long periods of time, often became frozen into place. To remove them required the use of a cold chisel (wedge) or the application of heat; however, the first plug had to be removed "cold" (no heat used) due to the possible existence of flammable materials in the coil.
Buckbee, an experienced man in the refining business, was the maintenance foreman at Lake Charles Refining Company. From all accounts, Buckbee apparently applied heat to remove the first plug from the heater coil. When the plug was removed an explosion and/or flare-up of flammable materials ensued. Both Buckbee and Vincent were burned. Buckbee suffered severe burns from which he died approximately one month later.
Vera Buckbee, surviving spouse, sued in tort for the death of her husband, alleging the defective nature of the heating unit, the failure of the seller and manufacturer to give adequate warnings concerning the potential dangers of the heater and the intentional torts of decedent's employers.
Various defendants to this suit were named, among which are: AWECO, Inc.; CKB Corporation; C & B Corporation, a/k/a CB Corporation; Kennedy International; C & H Refining Company of Lusk, Wyoming; Lake Charles Refining Company of Lusk, Wyoming; United Gas Pipeline Corporation, Inc.; Jerry R. Watt Company; Travelers Insurance Company; Plant Services, Inc.; the Alcorn Company; Lake Charles Refining Company; Joseph P. Chamberlain and Bob White.
Various exceptions and motions were filed by the defendants. The trial court sustained Jerry R. Watt Company's exception of lack of jurisdiction, dismissing it from the suit. The trial court granted Travelers Insurance Company's motion for summary judgment as it was the insurer of Jerry R. Watt Company. The trial court granted summary judgment in favor of Lake Charles Refining Company, AWECO, Inc., Kennedy International, C & H Refining Company of Lusk, Wyoming, Joseph P. Chamberlain and Bob White, dismissing the suit against these defendants.
Plaintiff appealed as follows:
"1) Granting of an exception of lack of jurisdiction of the person over Jerry S. (sic) Watt Company;

"2) Granting of the motion for summary judgment to the defendants Bob White,[[1]] AWECO, Inc., CKB Corporation[[2]] *700 and Joseph P. Chamberlain on the grounds that LSA-R.S. 23:1032 excludes these defendant joint venturers from liability to employees of the joint venture;

"3) Granting a motion for summary judgment in favor of Joseph P. Chamberlain holding that his actions were not intentional actions within the meaning of LSA R.S. 23:1032."
The assignments of error on appeal are as follow:
(1) Whether the court erred in granting the exception of lack of personal jurisdiction over the defendant, Jerry R. Watt Company;
(2) Whether the court erred in granting the motion for summary judgment barring plaintiff's action against joint venturers on the basis of the Louisiana Workmen's Compensation Statute, LSA-R.S. 23:1032; and
(3) Whether the court erred in granting the motion for summary judgment holding that Joseph P. Chamberlain was not acting intentionally within the meaning of LSA-R.S. 23:1032.

JURISDICTION: JERRY R. WATT COMPANY
On appeal plaintiff argues that the trial court erroneously granted defendant's, Jerry R. Watt Company's, declinatory exception of lack of jurisdiction. The trial court held that there were not sufficient minimum contacts between the defendant and the forum to activate its jurisdiction based upon the Louisiana Long Arm Statute, LSA-R.S. 13:3201 et seq. We disagree.
LSA-R.S. 13:3201 provides, in pertinent part, as follows:
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's:
(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense through an act or omission in this state;

(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; * * *"
In determining whether the provisions of the long arm statute apply to the case sub judice, our Supreme Court, in Adcock v. Surety Research & Inv. Corp., 344 So.2d 969, 972 (La.1977), stated:

"The issue of the applicability of La. R.S. 13:3201 is basically a question of fact, the resolution of which will vary according to the circumstances of each case. Because the contacts which each of the defendants has with the forum differ, the issue as to each defendant must be dealt with separately."

This court has recently passed upon the applicability and scope of the long arm statute in Heinberg v. Poole, 413 So.2d 271, 273 (La.App. 3rd Cir. 1982), in which we quoted from our earlier decision of Soileau v. Evangeline Farmer's Co-op, 386 So.2d 179, 182 (La.App. 3rd Cir. 1980), as follows:

"`It is well settled that the legislative intent in enacting this statute was to extend personal jurisdiction of Louisiana Courts over non-residents to the full limits of due process, i.e., to any non-resident who has "minimum contacts" with this state. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973), and Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir. 1968). This jurisprudence requires a liberal interpretation of LSA-R.S. 13:3201 *701 in favor of finding jurisdiction. Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La.1977); Latham v. Ryan, 373 So.2d 242 (La.App. 3rd Cir. 1979).

"`The findings of jurisdiction over non-residents involves an evaluation of the factual circumstances of the case in light of federal constitutional principles. In order for the proper exercise of jurisdiction in personam over a non-resident there must be sufficient minimum contacts between the non-resident defendant and the forum state to satisfy due process and "traditional notions of fair play and substantial justice" as required by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Whether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La. 1973)."'

See also, Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir. 1968).
Jerry R. Watt Company is engaged in the business of buying and selling used refining equipment. The company's home base is Oklahoma. A majority of its business is done in Texas but a portion is performed in other states including Louisiana.
In this case Jerry R. Watt Company had purchased the heater in question from United Gas Pipeline Company, Inc., which had closed its plant in Carthage, Texas. Joseph Chamberlain, Manager of Lake Charles Refining Company, negotiated a sale of certain equipment, including the heater, with Jerry R. Watt Company. These negotiations began in March 1978. The sale was for cash and Lake Charles Refining Company was to furnish the transportation of the equipment from Carthage, Texas, to its plant in Lake Charles, Louisiana.
On May 3, 1978, Lake Charles Refining Company issued a purchase order to Jerry R. Watt Company for the purchase of the heater. This order reflects that the heater was to be shipped to Lake Charles Refining Company in Lake Charles, Louisiana.
Bryan Watt, Vice-President of Jerry R. Watt Company, testified that sales in Louisiana over the past five years accounted for five percent of that company's business. The gross sales over this five year period to customers in Louisiana amounted to $214,000.00.
Bryan Watt also testified that he advertises in national oil publications which are distributed in Louisiana. Such publications are the Oil and Gas Journal and the Chemical Engineering Magazine.
Applying the cited authorities to the facts herein, we hold that there was sufficient minimum contacts between Jerry R. Watt Company and the forum to maintain jurisdiction pursuant to the Louisiana Long Arm Statute; LSA-R.S. 13:3201 et seq. The trial court erred in sustaining the exception of lack of jurisdiction. The judgment of the trial court, in this respect, will be reversed and remanded.

JOINT VENTURES: IMMUNITY UNDER LSA-R.S. 23:1032
We must also determine whether individual members of joint ventures may claim the exclusive remedy as provided under LSA-R.S. 23:1032. Partners and partnerships are granted immunity from tort suit under this provision; however, no mention of a joint venture or its members is made.
This court defined the general principles upon which a partnership is based in Martinez v. Posner, Martinez and Padgett, 385 So.2d 525, 528 (La.App. 3rd Cir. 1980), writs den., 393 So.2d 727 (La.1980), to be:

"In a partnership, the relationship (1) is founded on the intent of the members to be partners, that is, their consent thereto, LSA-C.C. art. 2805, (2) is founded on a contract between two or more persons for a pooling of `property, credit, skill or industry' for `the mutual participation in the profits which may accrue' therefrom, *702 LSA-C.C. art. 2801 and 2809 and share in the losses and expenses, LSA-C.C. art. 2813. In the absence of an agreement to the contrary, each partner may act for the partnership and bind the partnership to others. LSA-C.C. art. 2870.[[3]]..."
A joint venture has been defined in Westernberger v. State, Department of Education, 333 So.2d 264, 270 (La.App. 1st Cir. 1976, which stated:

"A joint venture is a special combination of two or more persons who engage in a specific venture for their joint profit or gain, without an actual partnership or corporate designation. Hayes v. Muller, 245 La. 356, 158 So.2d 191. It has been expressly held that a joint venture cannot exist where the business or enterprise is organized and operated in corporate form. Ault & Wiborg Co. of Canada, Ltd. v. Carson Carbon Co., 181 La. 681, 160 So. 298. Moreover, to constitute a joint venture, each party must have equal right to direct and govern the conduct of the other involved, as well as some voice in the control and management of the business undertaking which is the subject of the parties' relationship. Hauth v. Iacoponelli, 251 La. 410, 204 So.2d 767."

Finally, Marine Services, Inc. v. A-1 Industries, 355 So.2d 625, 627 (La.App. 4th Cir. 1978), found the law of partnership to control joint ventures. Further, the court quoted the comparison which had been made between partnerships and joint ventures by the Supreme Court in Daily States Publishing Co. v. Uhalt, 169 La. 893,126 So. 228, 231 (1930):

"`The relations between joint adventures are assimilated to those of partners inter se. Ludeau v. Avoyelles Cotton Co., [164 La. 275, 113 So. 846] supra. As respects the character of the business undertaken, the principal difference between a partnership and a joint adventure `is that, while a co-partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years.'"

We find joint ventures to be analogous and practically synonymous with partnerships except that the joint venture is somewhat more limited than the partnership. There exists a commonality of purpose, control, intent and subject in the relationship between the parties. There can be no logical reason to treat the two entities (partnership and joint venture) or their members differently under LSA-R.S. 23:1032 simply because a joint venture and its members is not specifically enumerated in the statute.
As the jurisprudence has recognized the applicability of partnership law to joint ventures we see no reason to distinguish the two as far as the applicability of LSA-R.S. 23:1032 is concerned. We, therefore, hold that a joint venture and its members is covered by the exclusive remedy provision of LSA-R.S. 23:1032. To hold otherwise would reach an anomalous result without a valid distinction. The effect of the law would be unduly thwarted.
The trial court was correct in so ruling.

INTENTIONAL TORT OF JOSEPH CHAMBERLAIN
Joseph Chamberlain was within the course and scope of his employment as manager of the Lake Charles Refining Company at the time of the accident in question. The plaintiff contends that Chamberlain committed an intentional tort causing Buckbee's death, thus Chamberlain, even though a fellow employee, is not granted immunity from a tort action by LSA-R.S. 23:1032.
Plaintiff alleges in paragraph 15 of her petition as follows:

*703 "Defendant JOSEPH P. CHAMBERLAIN, as manager of the LAKE CHARLES REFINING COMPANY is liable to the petitioner for the following acts or omissions which were intentional within the meaning of the Louisiana Workmen's Compensation Act:

a) Failing to test, inspect and assemble properly the heater;
b) Failing to clean properly the heater prior to ordering work on it;
c) Failing to warn that the heater had not been cleaned;
d) Advising that the heater had been cleaned and was safe, when it had not been cleaned and was not safe."
In her opposition to the motions for summary judgment, plaintiff introduced affidavits of employees of Plant Services, Inc. who had performed work on the heater in question. The substance of these affidavits reflect that on November 1, 1978 (more than a year before the accident in question), a welder was performing work on the heater causing a substance in the heater to catch fire. Joseph Chamberlain was allegedly notified of the fire and its cause. Plaintiff contends that this knowledge by Chamberlain would bring his alleged failure to warn, etc., on January 15, 1980, within the ambit of an intentional act under Bazley v. Tortorich, 397 So.2d 475 (La.1981). We disagree.
The fact that a fire occurred while a welder was working on this heater more than a year before this accident is so remote in time that knowledge of such by Chamberlain could not serve as a basis to establish that he desired the result of his failure to act, or that he believed that such results were certain to follow on January 15, 1980.
The allegations herein are strikingly similar to those considered by this court in the recent case of Shores v. Fidelity & Cas. Co. of New York, 413 So.2d 315, 318 (La.App. 3rd Cir. 1982).[4]
This court held that the allegations of plaintiff's petition were conclusions of the pleader and not facts. In Shores, this court discussed the case of Bazley v. Tortorich, supra, stating as follows:
"In Bazley, the plaintiff's petition alleged that the defendant fellow employees intentionally committed certain acts which, if proven, would constitute negligence, such as failure to warn of danger, failure to keep a lookout, etc., arguing that since these acts were voluntary, they were intentional within the meaning of the statute. This argument was rejected in light of the court's interpretation of the meaning of the statute, and it was held that the plaintiff's petition failed to state a cause of action for lack of allegations that the defendant desired the consequences of his acts or believed such consequences were substantially certain to follow...."
This court, in the recent case of Freeman v. Insurance Company of North America, 413 So.2d 692, 693 (La.App. 3rd Cir. 1982) also was faced with similar allegations in the plaintiff's suit against a co-employee.[5] *704 This court held in Freeman that such allegations were mere conclusions of the pleader and granted a motion for summary judgment.
Applying the reasoning of Shores and Freeman, we find that the trial court correctly sustained the motion for summary judgment dismissing the suit against Joseph Chamberlain.
For the reasons set forth, the judgment of the trial court sustaining the exception of lack of jurisdiction filed by Jerry R. Watt Company is reversed and set aside. In all other respects the judgment of the trial court is affirmed. The suit is remanded for further proceedings according to law and the views expressed herein. The costs of this appeal shall be paid one-half by the plaintiff-appellant and one-half by Jerry R. Watt Company.
REVERSED IN PART; AFFIRMED IN PART AND REMANDED.
NOTES
[1] Bob White was originally a member of the joint venture but sold his interest to AWECO, Inc. in December 1978, which was prior to the accident of January 15, 1980. This was apparently the reason the trial judge granted the motion for summary judgment filed by Bob White. It is unnecessary for us to discuss this issue any further since we conclude that joint venturers are immuned from tort-liability under LSA-R.S. 23:1032.
[2] The appeal as to "CKB Corporation" is erroneous. No service on "CKB Corporation" appears in the record. The trial court judgment did not include "CKB Corporation". The deposition of Angus Bailey reflects that "CKB Corporation" ceased to exist on July 6, 1979, when its charter was amended to become Chamberlain-Bailey Corporation. This occurred prior the accident in question.
[3] Since the rendition of this opinion, the partnership articles in the Civil Code have been amended; however, there have been no substantive changes from the principles set forth in Martinez. See LSA-C.C. arts. 2801-2848. (Acts 1980, No. 150 § 1. Also, Acts 1981, No. 797 § 1 and No. 888 § 1.)
[4] "Plaintiff's petition contains the following pertinent allegations:

`Plaintiff avers that defendants caused his injuries by the following acts and omissions:
1. In intentionally failing to provide the plaintiff a safe place to work;
2. Intentionally overworking the plaintiff;
3. Intentionally requiring the plaintiff to carry unsealed gasoline cans in the vehicle;
4. Intentionally failing to inspect the vehicle for hazardous conditions;
5. Intentionally failing to maintain the vehicle in a safe condition.
`Plaintiff further alleges that these and other intentional acts were committed by defendants with the knowledge that serious accidents and injuries were substantially certain to result from such acts and omissions.'"
[5] "Alternatively, reference is made to plaintiff Emma Williams Freeman, et als' original petition, particularly paragraph six, and to their second amending and supplemental petition, particularly paragraph one and to Gerard C. Lavigne's original petition, particularly paragraph six; it is seen that there the negligence and/or intentional acts of defendant Martin E. Guillory and South Louisiana Contractors, Inc. (respondent superior) are set forth as follows:

a) Failing to maintain a proper lookout;
b) Failing to maintain proper control of the vehicle in which Jeff Freeman and Gerard C. Lavigne were riding;
c) Being inattentive or distracted;
d) Crossing center line into opposing lane;
e) Failing to negotiate the curve;
f) Driving at excessive rate of speed at the time of the accident;
g) Failing to slow down or stop in time to avoid the accident;
h) Failing to do what he should have done;
i) Failing to see what he should have seen."