434 So.2d 506 (1983)
UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff-Appellee,
v.
HI-TOWER CONCRETE PUMPING SERVICE INC., et al., Defendant-Appellant.
No. 15422-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1983.
Rehearing Denied August 3, 1983.
*507 Theus, Grisham, Davis & Leigh by Phil D. Myers, Monroe, for plaintiff-appellee, U.S. Fidelity & Guar. Co.
Davenport, Files & Kelly by Mike C. Sanders, Monroe, for defendant-appellant (third party-plaintiff), Hi-Tower Concrete Pumping Service, Inc.
Sessions, Fishman, Rosenson, Boisfontaine & Nathan by Linda S.A. Burke, New Orleans, for third party-defendant, Thompson Royal Industries.
Grant, Dean & Kneipp by V. Gerald Dean, Monroe, for third party-defendant, Boran Craig Schreck Const.
Carl F. Walker, Monroe, for plaintiff-intervenor, Elton Bryant.
Before HALL, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Plaintiff-intervenor, Elton Bryant appeals a judgment sustaining an exception of lack of jurisdiction in personam over defendant, Boran Craig Schreck Construction Co., Inc., a Florida construction company. Finding no error in the trial court's ruling, we affirm.
In the original petition filed in this proceeding United States Fidelity & Guaranty Co. (USF & G) sued Hi-Tower Concrete Pumping Service, Inc. (Hi-Tower) for worker's compensation benefits paid and to be paid to Elton Bryant, as a result of an injury sustained by Bryant while acting in the course and scope of his employment with HLH Builders, Inc. (HLH). While Bryant was cleaning the intake hopper of a Thompson 875 Module Concrete Pump, the pump was allegedly negligently started by an employee of Hi-Tower causing serious injury to Bryant's hand. Thereafter, the original petition was amended to add Thompson Royal Industries (Thompson), the foreign corporation who manufactured the pump. Hi-Tower then third partied Thompson for indemnification and alternatively contribution. At this point, Bryant intervened naming Thompson and Hi-Tower as defendants and seeking damages. Hi-Tower amended its third party demand to add Bryant as a third party defendant.
Subsequently, Hi-Tower third partied Boran Craig Schreck Construction Co., Inc. (BCS), the Florida construction company which sold the used pump to Hi-Tower. By amended petition of intervention, Bryant added BCS as a defendant alleging that BCS had painted over warning instructions placed by the manufacturer on the pump.[1] BCS then filed the exception of lack of in personam jurisdiction which was sustained by the trial court.
The facts which are relevant to the exception are undisputed and appear from the record to be as follows: BCS is a Florida construction company that is not in the business of selling concrete pumps or pumping trucks. However, because it had purchased a new piece of equipment from Thompson, it no longer had a need for its used pump. A representative from Thompson contacted Larry Manning, the owner of Hi-Tower, by telephone from South Carolina to inform Manning of the availability of the used pump in Florida. Manning initially contacted a representative of BCS by phone to inquire about the pump, after which he traveled to Florida where he negotiated the purchase of the equipment and took delivery. The purchase price of the pump was $50,000. Prior to Manning's travel to Florida, the equipment manager of BCS sent through the mail three photographs of the pump to Manning in Louisiana. Additionally, because the new pump which BCS had purchased had not arrived, Hi-Tower agreed to rent the pump to BCS *508 pending delivery of its new pump. The contractual agreement[2] entered into between BCS and Hi-Tower was sent to Florida for execution by BCS. It is undisputed that BCS has never engaged in the business of selling such pumps; that it has never advertised this equipment or any other equipment for sale in Louisiana; that it did not solicit the sale of this equipment to anyone in Louisiana; and that it does not do nor has it ever done any construction work in Louisiana. Admittedly, BCS knew that the pump would be used in Louisiana.
In written reasons for judgment, the trial court stated:
Third party plaintiff, Hi-Tower Concrete Pumping Service, Inc., concedes that Boran was not "transacting business" or otherwise engaging in any persistent course of conduct in Louisiana. It contends, however, that the single sale of this piece of equipment resulted in "substantial revenue" ($50,000.00 sale price) and that alone was sufficient to subject the nonresident seller to the jurisdiction of the courts of this state. Hi-Tower cites Fisher v. Albany Machine and Supply Company [261 La. 747], 260 So.2d 691 (La.1972), as authority for this proposition.
* * * * * *
This Court interprets Fisher as requiring some minimum contacts in addition to the substantial revenue derived from the sale. Hi-Tower has essentially conceded that there were no minimum contacts by Boran with Louisiana. To subject this nonresident corporation to the jurisdiction of Louisiana courts offends the Due Process Clause of the United States Constitution. See International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
Elton Bryant is also a party with an interest in this exception as he filed an intervention in the third party demand. Mr. Bryant submitted three pages of a deposition of Larry G. Manning (owner of Hi-Tower) regarding his purchase of this equipment from Boran. The only thing this testimony adds to the issue of contacts between this seller and the State of Louisiana is that apparently a Max Eastman, who was the Equipment Superintendent of Boran, sent Mr. Manning three photographs of the pump (and possibly the truck) before Mr. Manning went to Florida and bought the equipment. Additionally, while Mr. Manning was in Florida to purchase the equipment, he agreed to rent the pump back to Boran for 2 or 3 months. This deposition does not appear to alter or conflict with the Joint Stipulation which says "... Larry Manning, went to Florida and negotiated the purchase of the equipment, and took delivery of it in Florida and drove it back to Louisiana" and "Boran Craig Schreck neither advertised in Louisiana nor solicited the sale of this equipment in Louisiana...". This Court does not view the testimony of Mr. Manning as disclosing minimum contacts sufficient to bring our present case under the scope of Fisher.

The exception of jurisdiction is sustained.
Only Bryant appeals the sustaining of the exception[3] assigning the following error:
The trial court erred in finding that the contacts between the nonresident seller and the Louisiana consumer did not meet the minimum requirements of due process, and sustaining the exception to personal jurisdiction ...
In essence, Bryant contends on appeal that when the BCS equipment superintendent sent Manning three photographs of the pump after the Thompson representative had contacted Manning from South Carolina, when Manning conducted negotiations from his Monroe telephone in connection with the purchase and lease to Florida for execution by BCS and because BCS knew *509 that the pump would be used in Louisiana, the minimum contact requirements of the Due Process Clause were met.
Conversely, BCS argues that a state court must consider whether the transaction involved sufficient minimum contacts with the forum state to satisfy the Due Process Clause. BCS strongly contends that an isolated sale of equipment in a foreign state will not suffice when the seller does not regularly solicit business there, is not in the business of equipment sales and does not avail itself of Louisiana law. It is finally contended that mere knowledge on the part of the seller that the equipment would be used in Louisiana will not suffice to satisfy due process requirements.
In this suit, jurisdiction is invoked under the "Long Arm" Statute, La.R.S. 13:3201 et seq. La.R.S. 13:3201 provides:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's:
(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
(e) having an interest in, using or possessing a real right or immovable property in this state; or
(f) non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(g) parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
The proper interpretation to be given to La.R.S. 13:3201 is stated in Soileau v. Evangeline Farmer's Co-op, 386 So.2d 179 (La.App. 3d Cir.1980):
It is well settled that the legislative intent in enacting this statute was to extend personal jurisdiction of Louisiana courts over non-residents to the full limits of due process, i.e., to any non-resident who has "minimum contacts" with this state. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973), and Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir. 1968). This jurisprudence requires a liberal interpretation of LSA-R.S. 13:3201 in favor of finding jurisdiction. Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La.1977); Latham v. Ryan, 373 So.2d 242 (La.App. 3rd Cir.1979).
The finding of jurisdiction over non-residents involves an evaluation of the factual circumstances of the case in light of federal constitutional principles. In order for the proper exercise of jurisdiction in personam over a non-resident there must be sufficient minimum contacts between the non-resident defendant and the forum state to satisfy due process and "traditional notions of fair play and substantial justice" as required by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Whether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La. 1973). [Emphasis added.]
See also Stuckey v. Stuckey, 434 So.2d 513 (La.App. 2d Cir.1983); Green v. Luxury *510 Auto Rentals, Ltd., 422 So.2d 1365 (La. App. 1st Cir.1982).
It is well settled that a state court may exercise personal jurisdiction over a non resident defendant only as long as there exist "minimum contacts" between the defendant and the forum state. The concept of minimum contacts performs two related, distinguishable functions: It protects the defendant against the burden of having to litigate in a distant or inconvenient forum and it acts to ensure that the states, through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
Quasha v. Shale Development Corp., 667 F.2d 483 (C.A. 5th Cir.1982), states:
To comport with due process requirements in asserting in personam jurisdiction, a nonresident defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In making the determination, this court considers first, whether the defendant purposefully availed itself of the benefits and protection of the forum state's laws, and second, whether the state has any special interest in providing a forum for the suit and whether the relative conveniences and inconveniences of the parties favor litigating in another forum. Austin v. North American Forest Products, supra, 656 F.2d [1076], at 1089 [5th Cir.1981]; Standard Fittings Co. v. Sapag, S.A., supra, 625 F.2d [630] at 641-43 [5th Cir. 1980]; Product Promotions v. Cousteau, supra, 495 F.2d [483] at 494-98 [5th Cir. 1974].
In addressing the applicability of the forestated general principles to the particular factual circumstances of this case, we note the case of Green v. Luxury Auto Rentals, Inc., supra. Green involved a suit for damages arising out of an alleged automobile lease agreement between plaintiff and defendant, a limited partnership domiciled in Atlanta, Georgia. Defendant filed an exception to the jurisdiction in personam over it which was sustained by the trial court. There, the plaintiff read an ad in an Atlanta newspaper for a Mercedes Benz leased out of Atlanta and telephoned the company there. After several phone conversations, defendant told plaintiff to come to Atlanta to put down a deposit and look at the car. Plaintiff then drove to Atlanta and negotiated the agreement. Plaintiff asked for certain equipment changes, and two weeks later, defendant called plaintiff to come get the car. Plaintiff flew to Atlanta, and the car was not ready. Therefore, plaintiff drove the car to Baton Rouge, where defendant had agreed that plaintiff could have the equipment put on the car. Defendant agreed to fly to Baton Rouge with the paperwork and contracts to sign. After defendant did not do this, plaintiff arranged with defendant for the terms on which to take the car back after which defendant sent someone to pick it up in Louisiana. The court affirmed the finding of no jurisdiction over this defendant stating:
In this case, the record reveals that defendant is a Georgia limited partnership. All of its negotiations with plaintiffs were by telephone, or in Atlanta. Ms. Green picked up the car in Atlanta, and the only document executed was executed in Atlanta. The only contacts with Louisiana were the use of the vehicle in Louisiana, and the fact that a representative of defendant picked up the car in Louisiana. There is no indication in the record that defendant has ever before leased a vehicle for use in Louisiana.
Certainly, the circumstances of this case do not lead to a conclusion that defendant transacted any business in Louisiana, within the meaning of the statute. Nor can we agree with plaintiffs' contention that an offense or quasi offense was committed when defendant's representative picked up the car in Louisiana. It does appear that defendant furnished *511 a vehicle to be used in Louisiana. However, we do not believe that, under the circumstances of this case, this isolated transaction constitutes sufficient minimum contacts between the defendant and Louisiana to satisfy due process and traditional notions of fair play and substantial justice. We therefore hold that Louisiana courts cannot exercise personal jurisdiction over defendant.
Furthermore, in Ek v. Nationwide Candy Division, 403 So.2d 780 (La.App. 3rd Cir. 1981), one of the defendants was never physically present in Louisiana and all of the documents signed by that defendant were executed in California. The only contended Louisiana contact between plaintiff and that defendant were two telephone calls and a letter. In holding that the Louisiana court had no jurisdiction over that defendant the court stated:
... We conclude that such marginal contacts by Lammers, [the non-resident defendant]... with this state are not equivalent to those "certain minimum contacts with the forum such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"... [Brackets added.]
The above rationale of these two cases is equally applicable to the instant case where the record reveals an isolated sale of one piece of used equipment by a Florida corporation not in the business of manufacturing, selling or supplying such equipment or any other goods and services in this state when the corporation admittedly did not transact business in this state. This is particularly true in light of the fact that this sale was not solicited by BCS, the equipment was not advertised in Louisiana for sale, the sale was not negotiated in Louisiana by any BCS representative and delivery of the equipment was not made in Louisiana.
The foreseeability or actual knowledge that the pump would be utilized in Louisiana alone is insufficient to meet the due process standards because foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause. As stated in World-Wide Volkswagen Corp. v. Woodson, supra:
If foreseeability were the criterion ... [e]very seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel...
This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State, Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there... The Due Process Clause, by ensuring the "orderly administration of the laws," . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," ... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation...
Thus, it appears that knowledge alone or foreseeability that a chattel will come to rest in a particular state is insufficient to subject a defendant to jurisdiction unless the facts and circumstances lead to a conclusion that the defendant purposefully availed itself of the privilege of conducting activities within the forum state in such a manner that the defendant has clear notice that it would be subject to suit there. This record does not support a finding that BCS availed itself of the privilege of conducting activities within this state in a manner that it had clear notice that it would be subject to suit in Louisiana.
Arguably, BCS derived substantial revenue from the sale of the pump; however, as did the trial court, we do not feel that under the circumstances of this case, this one isolated transaction constitutes sufficient minimum contacts to meet the "substantial *512 revenue" test of La.R.S. 13:3201(d). The revenue derived was from one sale of one thing used in this state; BCS did not derive substantial revenue from "goods" used in this state on a regular or repeated basis or pursuant to any other persistent or repeated course of conduct. It only derived revenue from one item sold and delivered in Florida to a Louisiana corporation on one occasion which was used in this state.
We distinguish this case factually from Soileau v. Evangeline Farmer's Co-op, supra, in which defendant Collier, an Arkansas company, sold seeds in excess of $250,000 which were shipped to Louisiana growers. Collier had full knowledge that its seeds were being shipped from its Arkansas plant directly into Louisiana for re-sale and planting. The court noted Collier derived substantial revenue from its seeds re-sold and consumed in this state and that Collier purposefully and systematically availed itself of the privilege of entering its products into the commercial markets of Louisiana. The court found jurisdiction over Collier citing as authority Liddell v. Hanover Insurance Co., 289 So.2d 299 (La.App. 1st Cir. 1973):
... the manufacturer of a product who sells in its home or another state with knowledge that its product will systematically be re-sold and consumed or used in Louisiana, and who derives substantial income therefrom, has sufficient contact with this state for us to assert jurisdiction... [Emphasis added.]
See also and compare Fisher v. Albany Machine and Supply Co., 261 La. 747, 260 So.2d 691 (1972)[4] and Groth v. International Dispensing Systems, 361 So.2d 1312 (La.App. 1st Cir.1978).[5]
Based on the foregoing discussion, we conclude that Louisiana may not assert jurisdiction over BCS, a foreign corporation, not principally engaged in the business of selling used equipment and placing such products in the stream of commerce, when BCS admittedly was not transacting business in Louisiana, did not advertise the equipment for sale in Louisiana, and did not initiate the transaction that was negotiated and consummated in Florida or over the telephone after which the Louisiana purchaser went to Florida to inspect the equipment and take delivery. We find a lack of the "minimum contacts" requirement between Louisiana and the non-resident corporation even though it can be argued that the non-resident corporation received substantial revenue from the Florida sale and knew that the purchaser would be taking the equipment from Florida to Louisiana. We conclude that the circumstances of this one isolated transaction do not constitute sufficient minimum contacts between BCS and Louisiana to satisfy due process and traditional notions of fair play and substantial justice under International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) and its progeny.
Accordingly, the judgment of the trial court sustaining the exception was not in *513 error and is affirmed at the cost of appellant.
JUDGMENT AFFIRMED.
NOTES
[1] The allegations that BCS had painted over the warning signs were obviously gleaned by the parties from answers to interrogatories propounded by Hi-Tower to Thompson.
[2] No copies of the contractual agreements between Hi-Tower and BCS were filed into evidence.
[3] We are informed by brief that Hi-Tower has since sued BCS in Florida.
[4] Although the Fisher holding indicates that the derivation of "substantial revenue from goods used or consumed ... in this state" is sufficient to subject a non resident defendant to the jurisdiction of our courts, we are of the opinion that Fisher is factually distinguishable from this case. In Fisher, the defendant was engaged in the business of selling sawmill equipment and had advertised and solicited business in Louisiana. Furthermore, the "trimmer" which caused plaintiff's injury was shipped F.O.B. to Louisiana and the freight bill was paid by the buyer. Thus, in Fisher, the defendant had minimum contacts with this state concerning the goods used in this state from which it derived substantial revenue.
[5] In Groth, the defendant manufacturer received $41,127 from sales of its manufactured goods in Louisiana. However, in addition to receiving substantial revenue the court also required a finding of minimum contacts with Louisiana and found them to be satisfied because the defendant had sold its products to three distributors in Louisiana and had knowledge of the shipment of its products to the ultimate consumers. Additionally, the manufacturer was under a legal obligation to replace or repair defective parts during a 30 day period following delivery to the ultimate consumer. Thus, in Groth, the defendant had minimum contacts with this state from the goods used in this state from which it derived substantial revenue.